UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ERIC BRODEUR, *on behalf of himself and all* :
*others similarly situated*,

                                :           Civil Action
                  Plaintiff,             No. 1:26-cv-10782-GAO

                                :

        v.                                :

NOVA BIOMEDICAL CORPORATION,

                                :

                Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANT NOVA BIOMEDICAL
## CORPORATION'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Scott T. Lashway (BBO #655268)
Mara A. O'Malley (BBO #693946)
Matthew M.K. Stein (BBO #666127)
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
*slashway@mintz.com*
*mstein@mintz.com*
*momalley@mintz.com*

***Counsel for Defendant***
***Nova Biomedical Corporation***

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ......................................................................................................................... 4

I.      PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE THEIR CLAIMS ........... 4

        A. Plaintiffs Ryan, Brodeur, And Rahman Do Not Allege Injury In Fact .......................... 5

        B. Plaintiffs Do Not Allege Traceability For Any Relief ...................................................... 7

                1.      Plaintiff Preston's Alleged "Identity Theft And
                        Fraudulent Incidents" Are Not Traceable To The Cyberattack .................. 7

                2.      Plaintiffs Do Not Plead That Their Information
                        Exposed In The Cyberattack Could Lead To Their Alleged Injuries ....... 10

        C. Plaintiffs Do Not Allege Redressability For Injunctive Relief .................................... 11

        D. The Amended Complaint Does Not Plead Actual
            Misuse Of The Data Compromised In The Cyberattack .................................... 12

II.     PLAINTIFFS' COMPLAINT DOES NOT STATE A CLAIM AGAINST NOVA ........ 14

        A. Plaintiffs' Negligence Claim (Count I) Fails ............................................................... 14

                1.      Plaintiffs' Negligence Claim Lacks Plausible
                        Allegations Of Breach Of A Duty To Protect Personal Information ........ 14

                2.      The Negligence Claim Does Not Allege Nova Failed To Timely
                        And Adequately Notify Plaintiffs Or Damages From Any Delay ............ 16

        B. The Breach Of Implied Contract Claim (Count II) Fails Because
            Plaintiffs Have Not Adequately Alleged An Agreement Exists Or Its Terms ..... 16

        C. The "Invasion of Privacy" Claim (Count III) Fails Because Plaintiffs Do
            Not Plead Nova Intentionally Disseminated Plaintiffs' Private Information ....... 18

        D. The Unjust Enrichment Claim (Count IV) Fails Because
            Plaintiffs Have Not Alleged A Sufficient Benefit Conferred On Nova ................ 19

        E. The Declaratory Judgment Claim (Count V) Should Be Dismissed ........................... 20

CONCLUSION..................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**CASES**                                                                          **PAGE(S)**

*Afridi v. Res. Credit Sols., Inc.*,
    189 F. Supp. 3d 193 (D. Mass. 2016) .....................................................................6

*Chawla v. Pitter*,
    No. 14-14303-GAO, 2015 WL 4363319 (D. Mass. July 16, 2015) (O'Toole, J.).....................4

*Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*,
    No. CIV-11-344-R, 2011 WL 9527717 (W.D. Okla. July 14, 2011) .......................................14

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).....................................................................................6

*Donovan v. Philip Morris USA, Inc.*,
    455 Mass. 215 (2009) ...................................................................................16

*Harvey v. Nat'l Amusements, Inc.*,
    No. 24-10027-GAO, 2025 WL 928776 (D. Mass. Mar. 27, 2025) (O'Toole, J.)............ *passim*

*Hochendoner v. Genzyme Corp.*,
    823 F.3d 724 (1st Cir. 2016)..........................................................................13

*In re LastPass Data Sec. Incident Litig.*,
    742 F. Supp. 3d 109 (D. Mass. 2024) ...................................................................16

*In re MCG Health Data Sec. Issue Litig.*,
    No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428 (W.D. Wash. Mar. 27, 2023)...................15

*In re MOVEit Customer Data Sec. Breach Litig.*,
    MDL No. 1:23-md-03083-ADB-PGL, 2026 WL 323704 (D. Mass. Feb. 6,
    2026) .................................................................................................5, 13

*John Hancock Mut. Life Ins. Co. v. Banerji*,
    447 Mass. 875 (2006) ...................................................................................6

*Julian v. McDonald Keohane Funeral Home Inc.*,
    No. 18-10113-RGS, 2018 WL 523200 (D. Mass. Jan. 23, 2018)..........................................20

*Lan Glob., Inc. v. Alchemy Telco Sols. U.S., LLC*,
    No. 22-CV-11732-AK, 2023 WL 5978296 (D. Mass. July 6, 2023) ................................17, 18

*Martorana v. Progressive Direct Ins. Co.*,
    No. 22-cv-10613-DJC, 2023 WL 2465639 (D. Mass. Mar. 10, 2023)...................................20

*Patterson v. Associated Wholesale Grocers, Inc.*,
No. 25-CV-02221-EFM-TJJ, 2026 U.S. Dist. LEXIS 29279
(D. Kan. Feb. 12, 2026) ........................................................................................................9

*Ramos v. Wells Fargo Bank, N.A.*,
No. 23-cv-0757-L-BGS, 2023 WL 5310540 (S.D. Cal. Aug. 17, 2023).................................16

*Razuki v. Caliber Home Loans, Inc.*,
No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ........................15

*Rodriguez v. Mass. Bay Transp. Auth.*,
92 Mass. App. Ct. 26 (2017)..............................................................................................17

*Santos-Pagán v. Bayamon Med. Ctr.*,
178 F.4th 66 (1st Cir. 2026)............................................................................... *passim*

*Scifo v. Alvaria, Inc.*,
No. 23-cv-10999-ADB, 2024 WL 4252694 (D. Mass. Sept. 20, 2024) ...................................6

*Shea v. Am. Int'l Coll.*
No. 1:24-CV-114499-AK, 2025 WL 2577196, at *3 (D. Mass. Sept. 5, 2025) ..................6, 19

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020)..............................................................................................16

*Taylor v. UKG, Inc.*,
693 F. Supp. 3d 87 (D. Mass. 2023) .................................................................. *passim*

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................................5, 11

*Tyler v. Michaels Stores, Inc.*,
840 F. Supp. 2d 438 (D. Mass. 2012) ...............................................................................19

*Verlus v. Experian Info. Sols., Inc.*,
No. 23-cv-11426-DJC, 2025 WL 836588 (D. Mass. Mar. 17, 2025).......................................6

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023)..........................................................................................11, 12

*Webb v. Injured Workers Pharm., LLC*,
No. 22-cv-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023).....................................18, 19

*Williams v. Bienville Orthopaedic Specialists, LLC*,
737 F. Supp. 3d 411 (S.D. Miss. 2024)................................................................................9

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
565 F. Supp. 3d 101 (D. Mass. 2021) ...............................................................................14

iii

## CONSTITUTIONS, STATUTES, AND RULES                                           PAGE(S)

U.S. Const., Art. III ............................................................................................... *passim*

Fed. R. Civ. P. 12 ....................................................................................................4, 14

M.G.L. c. 149, § 148 ..................................................................................................19

M.G.L. c. 214, § 1B ..................................................................................................18

iv

## **PRELIMINARY STATEMENT**

Plaintiffs seek, unsuccessfully, to remedy the pleading deficiencies that doomed Plaintiff Eric Brodeur's earlier complaint. (*See* Class Action Compl. (filed Feb. 11, 2026, ECF No. 1).) Because Brodeur (and Plaintiffs Ryan and Rahman as well), nearly a year since the cyberattack that disrupted Defendant Nova Biomedical Corporation's ("Nova") operations in late July 2025, cannot offer concrete allegations of misuse of information that can be traced to the cyberattack, Plaintiffs' attempt to gin up claims premised on harm allegedly suffered by Plaintiff Preston. (*See* Amended Class Action Compl. (ECF No. 29; "FAC").) Plaintiffs' attempts fail.

Even with Preston's allegations, all Plaintiffs lack Article III standing to assert their claims. A touchstone of standing in data breach cases in the First Circuit is that someone must plausibly plead actual misuse of their information fairly traceable to the defendant. The only Plaintiff claiming any misuse (Preston) does not plead that the alleged misuse is traceable to Nova because he pleads that the misuse began *prior to* the cyberattack (based on his own allegations). Plaintiffs do not otherwise plead cognizable harms. Thus, the FAC should be dismissed without prejudice.

Plaintiffs also fail to state a claim as to each of their five causes of action. *First*, Plaintiffs' negligence claim (Count I) fails because they identify no duty owed by Nova or breach of that duty. *Second*, Plaintiffs' breach of implied contract claim (Count II) fails because they do not adequately allege an agreement exists or its terms. *Third*, Plaintiffs' invasion of privacy claim (Count III) fails because they do not plead that Nova intentionally disseminated their private information. *Fourth*, Plaintiffs' unjust enrichment claim (Count IV) fails because they do not allege sufficient benefit conferred on Nova. And *fifth*, their declaratory judgment claim (Count V) should be dismissed because declaratory judgment is a remedy, not a claim. Accordingly, the FAC should be dismissed with prejudice.

## FACTUAL BACKGROUND[1]

Nova is a global provider of scientific and analytical solutions for the bioprocessing, clinical, and veterinary markets. (*See* FAC ¶¶ 2, 16.) On July 22, 2025, Nova experienced a sophisticated cyberattack that disrupted its operations. (*Id.* ¶ 21, Ex. A (ECF No. 29-1).) Nova determined that an unauthorized actor accessed Nova's electronic infrastructure and deployed malware. (*Id.*, Ex. A.) Nova notified impacted individuals in late January 2026. (*Id.*, Ex. A.) Impacted information included names, dates of birth, Social Security numbers, addresses, driver's license or state identity card numbers, financial institution information, and health insurance information. (*Id.* ¶ 30.) Impacted information differed for each individual: one person's impacted information could be some of those types, and not others. Nova offered impacted individuals two years of credit monitoring and identity theft protection through Experian.[2] (*See id.*, Ex. A.)

Plaintiff Brodeur filed a class action complaint on February 11, 2026, (ECF No. 1), which Nova moved to dismiss on June 30, 2026. (Motion to Dismiss; ECF Nos. 24 and 25.) Rather than oppose Nova's motion, Plaintiffs filed the FAC on July 15, 2026, adding Plaintiffs Ryan, Preston, and Rahman and excluding Brodeur's prior claim for negligence *per se*.

Mostly, the FAC tracks the original complaint. Plaintiffs each plead that they are "former employee[s] of [Nova]" who provided Nova with their "PII", (*id.* ¶¶ 42, 46, 62, 66, 81, 85, 103, 107) and that "[Nova] used [Plaintiffs'] PII to facilitate its employment of Plaintiff[s], including payroll, and required Plaintiff[s] to provide that PII in order to obtain employment and payment for that employment" (*id.* ¶¶ 46, 66, 85, 107). Plaintiffs offer nothing more, however, to allege

---

[1]    Nova takes Plaintiffs' allegations as true for purposes of this motion only. Nova does not otherwise concede or accept the accuracy or merit of Plaintiffs' allegations.

[2]    Nova also offered credit monitoring in October 2025 to current employees who may have been concerned that their personal information was impacted in the cyberattack. The unique enrollment code assigned to Plaintiff Preston was used on October 10, 2025.

how the relationship between Plaintiffs and Nova triggers obligations that Nova allegedly breached.  At best, Plaintiffs contend that Nova's obligations arose from Plaintiffs' unilateral "trust[ ]" and "underst[anding]", (*see id.* ¶¶ 47, 48, 67, 68, 86, 87, 108, 109) but provide no factual basis for their beliefs or any attendant legal duty.

Plaintiffs Ryan's, Brodeur's, and Rahman's allegations of injury are vague and speculative, lacking in factual detail that nudges them across the line from possible to plausible.  All Plaintiffs claim they were "injured by [Nova's] Data Breach," and that Nova "compromised Plaintiff[s]'[ ] PII." (*Id.* ¶¶ 44, 52, 64, 71, 83, 91, 105, 112.)  But Ryan's, Brodeur's, and Rahman's only specific consequence is that "in the aftermath of the Data Breach, Plaintiff[s] suffered from a spike in spam and scam text messages and phone calls."  (*Id.* ¶¶ 54, 73, 114.)  To be sure, each plaintiff enumerates a catalogue of generic injuries for which they seek monetary recovery from Nova:

1. Time spent "monitoring [their] accounts to protect [themselves] from identity theft."  (*Id.* ¶¶ 53, 72, 94, 113.)

2. Fear for their "personal financial security and worries about what information was exposed in the Data Breach."  (*Id.* ¶¶ 55, 74, 96, 115.)

3. "[A]nxiety, sleep disruption, stress, fear, and frustration."  (*Id.* ¶¶ 56, 75, 97, 116.)

4. "[T]he exposure and theft of [their] PII -- which violates [their] rights to privacy."  (*Id.* ¶¶ 57, 76, 98, 117.)

5. "[D]amages to and diminution in the value of [their] PII."  (*Id.* ¶¶ 58, 77, 99, 118.)

6. "[I]mminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft."  (*Id.* ¶¶ 59, 78, 100, 119.)

7. The anticipation of "spending considerable amounts of time and money to try and mitigate [their] injuries."  (*Id.* ¶¶ 60, 79, 101, 120.)

But only Plaintiff Preston offers allegations of actual misuse of his information.  (*See id.* ¶ 92.)  He enumerates separate instances of "identity theft and fraud" that allegedly resulted from Nova's cyberattack, the earliest of which occurred on April 7, 2025.  (*Id.* ¶ 92.a.)  Four instances explicitly

3

occurred before the July 22, 2025 "Data Breach." (*Id*. ¶¶ 3, 21, 92.a., b., c., and h.) And while Preston alleges he ***learned*** of four instances after July 22, 2025, he does not allege when those instances occurred. (*See id*. ¶ 92.d., e., g., and i.) Preston pleads no additional facts establishing how "identity theft and fraud" that began in April 2025 plausibly is connected to Nova's cyberattack rather than to some other previous incident.

## LEGAL STANDARD

Nova seeks dismissal under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. "Rule 12(b)(1) requires a court to assess whether the court has subject matter jurisdiction over the claimed injuries. Dismissing a case for lack of standing is functionally equivalent to a dismissal for lack of jurisdiction." *Harvey v. Nat'l Amusements, Inc.*, No. 24-10027-GAO, 2025 WL 928776, at *3 (D. Mass. Mar. 27, 2025) (O'Toole, J.) (citation modified), *appeal voluntarily dismissed*, No. 25-1414 (1st Cir. Dec. 29, 2025). This is Plaintiffs' burden, and "all well-pleaded facts in the complaint" are "take[n]" "as true and" "all reasonable inferences" are "indulge[d]" "in [their] favor." *Id.* (citation modified). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims and asks if the complaint "allege[s] facts that, taken as true, state a claim to relief that is plausible on its face." *Id.* at *3 (citation modified). "[A]ll factual allegations in the complaint" are "accept[ed]" "as true." *Id.* But conclusory legal allegations "need not be credited." *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 94 (D. Mass. 2023); *Santos-Pagán v. Bayamon Med. Ctr.*, 178 F.4th 66, 72 (1st Cir. 2026) (Courts are "not require[d] . . . to credit bald assertions, unsupportable conclusions, and opprobrious epithets." (citation modified)).

## ARGUMENT

## I.    PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE THEIR CLAIMS

As the parties invoking the Court's jurisdiction, Plaintiffs must sufficiently plead standing under Article III. *See Chawla v. Pitter*, No. 14-14303-GAO, 2015 WL 4363319, at *1 (D. Mass.

July 16, 2015) (O'Toole, J.) (dismissing for lack of subject-matter jurisdiction).  To do so, they must "sufficiently plead three elements":

1.    "[I]njury in fact," *i.e.*, "they suffered an injury in fact that is concrete, particularized, and actual or imminent";

2.    "[T]raceability," *i.e.*, "the injury was likely caused by [Nova]"; and

3.    "[R]edressability," *i.e.*, "the injury would likely be redressed by judicial relief."

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Santos-Pagán*, 178 F.4th at 71.  They "must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  *TransUnion*, 594 U.S. at 431.[3]  For purposes of standing, the four Plaintiffs fall in two groups:  Preston, who claims to have experienced identity theft; and Ryan, Brodeur, and Rahman, who do not.

Ryan, Brodeur, and Rahman should each be dismissed because each fails to plead all three elements of Article III standing.  Preston should be dismissed because his alleged injuries are not traceable to Nova's cyberattack.

### A.    Plaintiffs Ryan, Brodeur, And Rahman Do Not Allege Injury In Fact

"An injury in fact is an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Santos-Pagán*, 178 F.4th at 71.  Ryan's, Brodeur's, and Rahman's claimed harms fail to meet that standard, as do Preston's claimed harms other than his alleged identity theft.[4]

***Lost time and money.***  Plaintiffs claim to have spent "significant time and effort monitoring [their] accounts to protect [ ] from identity theft" and "anticipate[] spending considerable amounts

---

[3]    Plaintiffs' standing is determined by the facts as they existed on July 15, 2026, when Plaintiffs filed the FAC.  *See In re MOVEit Customer Data Sec. Breach Litig.*, MDL No. 1:23-md-03083-ADB-PGL, 2026 WL 323704, at *2 (D. Mass. Feb. 6, 2026).

[4]    FAC ¶ 92 lists eleven alleged instances of actual identity theft for Preston.

of time and money to try and mitigate [their] injuries." (FAC ¶¶ 53, 60, 72, 79, 94, 101, 113, 120.) But absent "show[ing] an imminent risk of identity theft, prophylactic costs to mitigate such a risk do not constitute an independent injury sufficient to support standing." *Taylor*, 693 F. Supp. 3d at 100 (dismissing data breach claims for lack of standing). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013).

*Emotional distress.* Plaintiffs assert they "fear[] for [their] personal financial security and worr[y] about what information was exposed in the Data Breach" and "suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration." (FAC ¶¶ 55–56, 74–75, 96–97, 115–16.) Even if true, these "conclusory statements" "do not suffice to establish standing." *Scifo v. Alvaria, Inc.*, No. 23-cv-10999-ADB, 2024 WL 4252694, at *5 n.9 (D. Mass. Sept. 20, 2024) (no standing for data breach claims). Plaintiffs must assert more than conclusions "to permit an inference that [a plaintiff] has suffered a concrete emotional or mental injury." *Verlus v. Experian Info. Sols., Inc.*, No. 23-cv-11426-DJC, 2025 WL 836588, at *3 (D. Mass. Mar. 17, 2025) (dismissing claim for alleged inaccurate remarks on plaintiff's credit reports for lack of standing). Moreover, emotional distress is not a cognizable injury recoverable through Plaintiffs' claims.[5]

*Loss of privacy.* Plaintiffs claim "actual injury from the exposure and theft of [their] PII––which violates [their] rights to privacy." (FAC ¶¶ 57, 76, 98, 117.) But "[d]isclosure is an essential element of the cause of action for an invasion of privacy," and Plaintiffs here "fail to

---

[5]    *See John Hancock Mut. Life Ins. Co. v. Banerji*, 447 Mass. 875, 888 (2006) ("[D]amages for mental suffering are generally not recoverable in an action for breach of contract."); *Afridi v. Res. Credit Sols., Inc.*, 189 F. Supp. 3d 193, 199 (D. Mass. 2016) ("[S]tress and anxiety are not recoverable" for negligence "unless tied to a physical harm," which Plaintiffs do not allege.). Plaintiffs will undoubtedly cite *Shea v. Am. Int'l Coll.* for the contrary proposition. (Their counsel were plaintiff's counsel in that case.) Nova respectfully submits that *Shea* should not be followed here because that plaintiff also alleged actual misuse (a fraudulent health insurance claim). No. 1:24-CV-114499-AK, 2025 WL 2577196, at *3 (D. Mass. Sept. 5, 2025).

provide factual support that any third parties actually viewed or will imminently view [their] data." *Taylor*, 693 F. Supp. 3d at 100 (citation modified).

*Loss of value of personal information.*  Plaintiffs claim "actual injury in the form of damages to and diminution in the value of [their] PII."  (FAC ¶¶ 58, 77, 99, 118.)  But "[c]ourts have consistently rejected allegations that the diminution in value of personal information can support standing."  *Taylor*, 693 F. Supp. 3d at 101 (citation modified).

*Imminent and impending risk.*  Plaintiffs claim "imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft" due to the cyberattack on Nova.  (FAC ¶¶ 59, 78, 100, 119.)  First Circuit authority requires them to plead that someone's data compromised in the cyberattack was actually misused for there to be an "imminent risk" that supports standing.  *See Harvey*, 2025 WL 928776, at *2 n.2 ("This Court is not aware of any instances in the First Circuit where standing in a data breach case has been established absent some 'actual misuse' of the stolen data.").  Plaintiffs do not plead that here.  While the FAC asserts that Plaintiff Preston's information was misused, as shown below in § I.B.1, that misuse began *before* the cyberattack on Nova and so is not traceable to it.

Therefore, Plaintiffs fail to plead an injury in fact.

### B.      Plaintiffs Do Not Allege Traceability For Any Relief

Even if Plaintiffs pled an injury in fact, they fail to plead the second element of Article III standing:  traceability.  As explained in *Santos-Pagán*, Plaintiffs need to "provide plausible support for a reasonable, let alone 'obvious,' inference of a temporal connection" between the cyberattack and their claimed injuries.  178 F.4th at 72.  They do not.

#### 1.      Plaintiff Preston's Alleged "Identity Theft And Fraudulent Incidents" Are Not Traceable To The Cyberattack

Plaintiff Preston claims to have experienced eleven "identity theft and fraudulent incidents"

between April 7, 2025, and December 22, 2025.  He alleges four incidents that occurred in April and June 2025 (FAC ¶ 92):  (1) April 7, 2025, "suspicious activity on his Citi Diamond Preferred Card for the amount of $1400.98; (2) a June 16, 2025 "email from Citi Bank requesting that he complete a pending application" that he had not initiated; (3) a June 18, 2025, notification that "someone hacked into his UKG account; [ ] requested a reroute of his paycheck, called to get his 401K plan adjusted, and filed for a withdrawal of [his] 401K due to hardship" and fraudulent credit card charges;" and (4) June 2025 access by an unknown person to his "work bank account and charge[s] of $2500.00 USD to his Discover[] card."  That is, before Plaintiffs allege "[o]n July 22, 2025, Defendant was hacked in the Data Breach."  (*Id.* ¶¶ 3,[6] 21.)

Preston also alleges instances of misuse to which he was alerted or learned of after July 22, 2025.  (*Id.* ¶ 92.)  Preston does not plead clearly when these instances of alleged misuse actually occurred.  (Learning of misuse after July 22, 2025, and misuse occurring after July 22, 2025, are not the same.)  One such allegation is that on October 30, 2025, Navy Federal Credit Union ("NFCU") notified Preston that "his existing accounts had been closed and new accounts had been opened."  (*Id.* ¶ 92.j.)  Preston alleges he did not initiate or authorize the closure of his existing account or opening of a new account.  (*Id.*)

So, although Preston claims to be "very careful about the privacy and security of his PII" and "does not recall ever learning that his information was compromised in a data breach incident -- other than the Data Breach at issue here" (*Id.* ¶¶ 84, 88), Preston's information was ***already compromised and actively being misused by unauthorized individuals on April 7, 2025***, long

---

[6]      Plaintiffs clarify and define "Data Breach" to mean "when cybercriminals infiltrated its insufficiently protected computer systems in a data breach[.]"  (*Id.* ¶ 3.)

before he alleges Nova's Data Breach impacted his data on July 22, 2025.[7] (*Id*. ¶¶ 3, 21.)  Preston does not identify any additional facts that support an inference that the alleged misuse beginning in April was somehow related to the cyberattack about which Nova made notice in January 2026 other than concluding that it was a "direct result" of the "Data Breach." (*Id*. ¶ 93.)

A temporal nexus in data breach litigation is important.  For "identity theft and fraudulent incidents" to be traceable to the incident, there must be "plausible support for a reasonable, let alone 'obvious,' inference of a temporal connection between [the alleged identity theft or fraud] and the data breach." *Santos-Pagán*, 178 F.4th at 72.  In *Santos-Pagán*, the court determined that a fraudulent account discovered after a data breach did not support a reasonable inference of a temporal connection between the purported fraud and the data breach.  *Id.* at 72–73.  In other districts, courts have found that misuse of data that may have occurred ***before*** a data breach also is fatal to traceability.  *See e.g.*, *Patterson v. Associated Wholesale Grocers, Inc.*, No. 25-CV-02221-EFM-TJJ, 2026 U.S. Dist. LEXIS 29279, at *10–11 (D. Kan. Feb. 12, 2026) (no standing where despite learning "shortly after the [d]ata [b]reach" about a fraudulent loan, plaintiff failed to plead allegations about when the fraudulent loan application was made or when the loan was issued); *Williams v. Bienville Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411, 425 (S.D. Miss. 2024) ("misuse of [Plaintiffs'] PII or learn[ing] that some of their PII had been stolen after the data breach" was not fairly traceable to the data breach without allegations of when the misuse occurred or whether the misused data matched the data involved in the breach).

Here, Preston admits his information was actively misused as early as April 7, 2025, ***before*** the cyberattack that disrupted Nova's systems.  (FAC ¶¶ 3, 21, 92.)  He also admits that one such

---

[7]    Preston claims to "not knowingly transmit his PII over the internet in an unsafe manner" and to be "careful to store any documents containing his PII in a secure location."  (FAC ¶ 84.) But the alleged identity theft and fraud before the cybersecurity attack suggest otherwise.

instance involved NFCU. (*Id*. ¶ 92) Critically, NFCU suffered its own data breach about which it notified the public in September 2024[8] -- seven months before Preston experienced his first alleged instance of identity theft. (*Id.*) Plaintiffs themselves acknowledge there is often a "time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used." (*Id.* ¶ 133.) Taken together, these allegations negate a reasonable or obvious inference of a temporal connection between his claimed "identity theft and fraudulent incidents" both before and after the Nova cyberattack and the Nova cyberattack. Indeed, it is reasonable, and plainly 'obvious,' to infer a temporal connection between Preston's allegations of misuse and a compromise of some type to some other previous incident, and that he began to discover the misuse months later, beginning in April and continuing through December 2025.

### 2. Plaintiffs Do Not Plead That Their Information Exposed In The Cyberattack Could Lead To Their Alleged Injuries

In addition to failing to plead a temporal connection between Preston's alleged "identity theft and fraudulent incidents" and the cyberattack (*see* § I.B.1), the FAC also fails to plead, among other things, that the "information that [Plaintiffs] provided to [Nova] or that was exposed in the data breach" is the kind of information that could lead to their alleged injuries. *Santos-Pagán*, 178 F.4th at 73. The only specific claim all Plaintiffs make is that they each received an increase in spam or scam calls or messages. (FAC ¶¶ 54, 73, 95, 114.)

In *Santos-Pagán*, the plaintiff failed to plead that the information needed to open a fraudulent cell phone account (her cited misuse) was impacted in that breach: her "allegation does not indicate what *type* of PII . . . was in [the defendant's] files at the time of the breach," and her assertion that "the only personal data needed to open a cellphone account was in [the defendant's]

---

8    *See* Mass.gov, *https://www.mass.gov/doc/2024-1635-navy-federal-credit-union/download* (last visited Aug. 10, 2026).

files at the time of the breach" "constitutes the type of bald assertion [courts] are not required to credit." *Santos-Pagán*, 178 F.4th at 73. Here, each Plaintiff pleads that "[a]s a condition of his [or her] employment with [Nova], Plaintiff provided [Nova] with his [or her] PII," but they do not plead what information each provided. (FAC ¶¶ 46, 66, 85, 107.) No Plaintiff pleads that their telephone number or email address was impacted, and therefore they do not plead that the Nova cyberattack is traceable to their problems or the "spike" in text messages.

Each Plaintiff asserts that he or she is "very careful about the privacy and security of [his or her] PII … does not knowingly transmit [ ] PII over the internet in an unsafe manner … and is careful to store any documents containing [ ] PII in a secure location." (*Id.* ¶¶ 45, 65, 84, 106.) But those allegations, like the generalized allegation in *Santos-Pagán*, are bald assertions unsupported by facts: Plaintiffs do not allege how each avoids transmitting their information "in an unsafe manner" or what the "secure location" is in which they store their information.

"The allegations in [Plaintiffs'] complaint do not plausibly support a reasonable inference that" the asserted spike in spam and scam communications in FAC ¶¶ 46, 66, 85, and 107 "is fairly traceable to the [Nova] data breach." *Santos-Pagán*, 178 F.4th at 73.

### C.    Plaintiffs Do Not Allege Redressability For Injunctive Relief

Even if Plaintiffs could pursue their claimed harm (they cannot), they must plead standing for "each form of relief that they seek." *TransUnion*, 594 U.S. at 431. The third component of standing is redressability: can the relief sought redress the alleged injury. *See Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 378 (1st Cir. 2023) ("*Webb I*"). Here, Plaintiffs seek prospective injunctive relief a forward-looking injunction as to Nova's information-security and data-handling practices (*see* FAC ¶¶ 219–20, 235–40 & at 44 (Prayer For Relief ¶¶ B–C)) but lack standing to seek it.

11

*Webb I* illustrates why. "[A]n injunction requiring [a defendant] to improve its cybersecurity systems cannot protect [ ] plaintiffs from future misuse of their" already-acquired data. 72 F.4th at 378. Because the *Webb I* plaintiffs "requested injunctions [were] not likely to redress their actual injuries," they lacked standing. *Id.* The same is true here: injunctive relief would not redress any injuries Plaintiffs claim to have sustained from the data breach. Moreover, like Plaintiffs here, the *Webb I* plaintiffs lacked standing because they "d[id] not allege that any such future breach will occur," and they must show they are "likely to suffer future injury" to have standing for injunctive relief. *Id.* (citation modified). "[A]ny available inference that [the defendant's] ***prior*** data breach might make a ***future*** data breach more likely" was "undercut" by pleading that the defendant "implemented new security safeguards[.]" *Id.* (citation modified).

*Webb I* applies here. Nova's notification letter says, "[s]ince the security incident, we have been working closely with our internal and external experts to further enhance the security of our systems." (FAC, Ex. A.) The FAC quotes this language, (¶ 36), and alleges no factual basis to infer that Nova is at more risk of experiencing a future cyberattack than "virtually every holder of private data." *Webb I*, 72 F.4th at 378. So, Plaintiffs lack standing to seek prospective injunctive relief, and the FAC should be dismissed without prejudice on that ground.[9]

### D.    The Amended Complaint Does Not Plead Actual Misuse Of The Data Compromised In The Cyberattack

Failing to plead actual misuse of ***anyone's*** data impacted in a data breach -- a Plaintiff's or someone else's -- is dispositive of standing in the First Circuit. There are no "instances in the First Circuit where standing in a data breach case has been established absent some 'actual misuse'"; without "plausible allegation of actual misuse traceable to the specific data breach at issue in this

---

[9]    FAC ¶ 41 refers to a 2021 "ransomware attack" Nova experienced as "part and parcel of Defendant's *pattern* of negligent data security." This conclusion relies on the same flawed assumption that a cyberattack proves negligence.

case [Plaintiffs] lack standing for either damages or injunctive relief." *Harvey*, 2025 WL 928776, at *3 & n.2. Indeed, even if the misuse occurs *after* the complaint has been filed, claims filed before the date of misuse may be dismissed on this basis. *See In re MOVEit Customer*, 2026 WL 323704, at *2 (dismissing all complaints filed before misuse of compromised data began).

Here, Plaintiffs do not plead actual misuse traceable to the cyberattack on Nova. Preston's alleged "identity theft and fraudulent incidents" in FAC ¶ 92 began as early as April 7, 2025, meaning that those incidents are no more examples of actual misuse traceable to the alleged July 22, 2025 "Data Breach" than the discovery of the fraudulent cell phone account was in *Santos-Pagán*. (*See* § I.B.1.) Without Preston's allegations, Plaintiffs are left only with their claims that, "[they] suffered from a spike in spam and scam" calls and messages. (FAC ¶¶ 54, 73, 95, 114.) But Plaintiffs do not allege any connection between what data they believe was involved in the cyberattack and those alleged "spike[s]" and offer "no specific information [ ] regarding the harm, if any, that has befallen" them. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 732 (1st Cir. 2016) (no standing for that reason).

The FAC provides no other factual allegations of misuse. At most, it alleges "Plaintiffs' [PII] has or will end up for sale on the Dark Web" (FAC ¶ 129), Plaintiffs "must now live with the knowledge that their PII is forever in cyberspace and was taken by people willing to use the [PII] for any number of improper purposes and scams" (*id*. ¶ 135), and "[t]he development of 'Fullz' packages means that the PII exposed in the Data Breach can easily be linked to data of Plaintiffs [ ] that is available on the internet." (*Id*. ¶ 140). Yet Plaintiffs do not plead that the information is available publicly or on the dark web,[10] or actually in a Fullz package. And Plaintiffs do not plead

---

[10]     Preston's allegation (FAC ¶ 92) that "a LifeLock Dark Web Monitoring alert notify[ed] him that information potentially belonging to [him] had been detected on the dark web, with an exposure date of December 18, 2025" should be disregarded for the reasons explained in § I.B.1.

that data compromised in the cyberattack -- theirs or anyone else's -- has been misused.  They provide no justification for this Court to break new ground here.  Because Plaintiffs fail to allege adequately ***any*** misuse, they cannot plead a material risk of future data misuse that confers standing.  *See Taylor*, 693 F. Supp. 3d at 98.

## II.    PLAINTIFFS' COMPLAINT DOES NOT STATE A CLAIM AGAINST NOVA

Even if Plaintiffs had standing, each of their five claims are insufficiently pled, including one not recognized by Massachusetts law, and should be dismissed under Rule 12(b)(6).[11]

### A.    Plaintiffs' Negligence Claim (Count I) Fails

To state a claim for negligence under Massachusetts law, Plaintiffs must establish a duty, breach of that duty, causation, and damages.  *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 106 (D. Mass. 2021).  Here, Plaintiffs (1) have not alleged adequately how Nova breached any duty, and (2) have not alleged adequately a breach of any duty or damages premised on a duty to timely and adequately notify Plaintiffs.

#### 1.    Plaintiffs' Negligence Claim Lacks Plausible Allegations Of Breach Of A Duty To Protect Personal Information

Plaintiffs' theory is that Nova owed a blanket duty to protect their information, and because there was a data breach, Nova must have breached that duty.  Plaintiffs' allegations support neither this logical leap nor any basis for an alleged duty.[12]

---

[11]    Plaintiffs' claims against Nova's ***present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities,"*** (*see* FAC ¶ 1 (emphasis added)), should also be dismissed.  *See Chieftain Royalty Co. v. Dominion Okla. Tex. Expl. & Prod., Inc.*, No. CIV-11-344-R, 2011 WL 9527717, at *1 (W.D. Okla. July 14, 2011) (dismissing claims against "unnamed 'successors and affiliates'" because the complaint "[did] not provide [ ] 'fair notice' of what the claims are against those parties and the grounds upon which they rest" and "federal courts do not have jurisdiction over unnamed parties").

[12]    FAC ¶¶ 19–20 alleges Nova "recognizes" "duties to protect [ ] current and former employees' and customers' PII and to notify them about breaches" based on "declar[ations] in its

*(cont'd)*

14

Courts often reject attempts to premise negligence on a data breach's occurrence alone. *See, e.g.*, *In re MCG Health Data Sec. Issue Litig.*, No. 2:22-CV-849-RSM-DWC, 2023 WL 3057428, at *3 (W.D. Wash. Mar. 27, 2023) (dismissing data breach action because plaintiffs did not allege how defendant's "conduct fell below industry standards beyond [ ] conclusory allegations that [it] must have fallen below industry standards because a data breach occurred"), *adopted*, 2023 WL 4131746 (W.D. Wash. June 22, 2023). A cyberattack is not evidence of inadequate security practices, and "[a]llegations that a system is inadequate because a negative result occurred [are] conclusory." *Id.*

Plaintiffs do not allege facts supporting a reasonable inference that Nova breached any duty to protect their information. Instead, they enumerate "industry standards" and assert that Nova "fail[ed] to comply with" them. (FAC ¶¶ 157–60.) For example, they list "industry standards" such as: "educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data" -- yet they do not plead that Nova lacked them. (*Id.* ¶ 157.) Courts reject such conclusory pleading. *See, e.g.*, *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG), 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (dismissing data breach claims where plaintiff did not plead "[w]hat facts lead him to believe [defendant] didn't comply with industry standards" and what "other companies [are] doing that [defendant] isn't").

Moreover, Plaintiffs cannot escape the economic loss doctrine through their unsupported assertions of "anxiety, sleep disruption, stress, fear, and frustration." (FAC ¶¶ 56, 75, 97, 116.)

---

'Privacy Policy.'" But that policy is not relevant because it applies "to information collected through this website." (*Id.* ¶ 20.) Plaintiffs "do not allege that [Nova] collected [their] information in [that] way[], and so this policy does not apply." *Harvey*, 2025 WL 928776, at *3 n.3.

"The economic loss doctrine prohibits recovery in tort unless the plaintiffs can establish that the injuries they suffered due to the [defendant's] negligence involved physical harm or property damage, and not solely economic loss." *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 124 (D. Mass. 2024) (citation modified) (dismissing negligence claims in data breach action based on economic loss doctrine).

### 2.    The Negligence Claim Does Not Allege Nova Failed To Timely And Adequately Notify Plaintiffs Or Damages From Any Delay

Plaintiffs also base their negligence claim on Nova's alleged "breach [of] its duties by failing to provide reasonably timely notice of the Data Breach[.]" (FAC ¶ 187.)  This theory fails for two reasons.  ***First,*** Plaintiffs fail to allege when Nova determined whose data was compromised, so they cannot support a reasonable inference that the January 27, 2026 notices were untimely.  *See Ramos v. Wells Fargo Bank, N.A.*, No. 23-cv-0757-L-BGS, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023) (no allegation of delayed notification when plaintiff did not allege date defendant "discovered or was notified of an alleged breach").  ***Second,*** Plaintiffs fail to allege that delay caused ***them*** any injury.  Their claimed damages flow from the data breach itself.  (*See* FAC ¶¶ 54–60, 73–79, 95–101, 114–120.)  Because negligence requires a "causal connection between the defendant's negligence and the plaintiff's injury," this claim fails.  *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222 (2009).

### B.    The Breach Of Implied Contract Claim (Count II) Fails Because Plaintiffs Have Not Adequately Alleged An Agreement Exists Or Its Terms

Plaintiffs have not adequately alleged an agreement exists or its specific terms.  To plead breach of contract, express or implied, a plaintiff must "state with 'substantial certainty' the facts showing the existence of the contract" and its legal effect.  *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (citation modified).  "All the essential terms of [the] contract [must be] definite and certain so that the intention of the parties may be discovered, the nature and extent of their

16

obligations ascertained, and their rights determined." *Lan Glob., Inc. v. Alchemy Telco Sols. U.S., LLC*, No. 22-CV-11732-AK, 2023 WL 5978296, at \*12 (D. Mass. July 6, 2023) (citation modified) (dismissing promissory estoppel claim on "legal principles [ ] essentially identical to contract principles").

A breach of contract claim requires an agreement between the parties, which demands "(1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms." *Rodriguez v. Mass. Bay Transp. Auth.*, 92 Mass. App. Ct. 26, 29 (2017) (citation modified) (promise to provide "timely and reliable service" silent about source and scope of the obligation and the remedy for breach too vague to create contract).

Plaintiffs do not clear this hurdle. They allege Nova, "[i]n collecting and maintaining the PII, agreed it would safeguard the data in accordance with its internal policies [and] state [and federal] law" and "not disclose the PII to unauthorized persons." (FAC ¶¶ 18, 197.) But Plaintiffs do not offer details of where, when, or how any such promise occurred. Indeed, they focus *only* on their own subjective understanding (emphasis added to all three quotations):

1. Plaintiffs "*trusted* [Nova] would use reasonable measures to protect [the PII] …" (*Id.* ¶¶ 47, 67, 86, 108.)

2. "Plaintiffs and Class Members *reasonably understood* that a portion of the funds they paid or derived from their labor would be used to pay for adequate security measures." (*Id.* ¶ 194.) Plaintiffs do not allege they paid funds to Nova.

3. "Plaintiffs and Class Members *reasonably understood* that [Nova] would use adequate cybersecurity measures to protect the PII…" (*Id.* ¶ 195.)

Plaintiffs do not plead a basis for their "trust[ ]" or "reasonabl[e] underst[anding]," or that it is common to all of them despite commencing employment at Nova years apart.[13] They fail to

---

[13] Plaintiffs' various employment dates were: prior to May 2018 (Ryan), (FAC ¶ 42); October 2023 to September 2025 (Brodeur), (*id.* ¶ 62); and January 2025 to May 2026 (Preston), (*id.* ¶ 81). Rahman does not plead the dates of her employment. (*See id.* ¶ 103.)

provide "substantial certainty" of facts "showing the existence of the contract." *Squeri*, 954 F.3d at 71 (citation modified) (no implied contract where plaintiffs claimed their deposit to attend a college obligated the college to provide them with earlier notice of certain facts). Essential terms remain too vague. *See Lan Glob.*, 2023 WL 5978296, at *13–14 (alleged promise too vague and without sufficient allegations to discern its scope, consideration, duration, or particulars). Accordingly, Plaintiffs' claim should be dismissed.

### C.  The "Invasion of Privacy" Claim (Count III) Fails Because Plaintiffs Do Not Plead Nova Intentionally Disseminated Plaintiffs' Private Information

Massachusetts does not recognize Plaintiffs' attempted common-law "Invasion of Privacy" claim. *Webb v. Injured Workers Pharm., LLC*, No. 22-cv-10797, 2023 WL 5938606, at *4 (D. Mass. Sept. 12, 2023) ("*Webb II*") (dismissing privacy claim). It should be dismissed on that basis. For this motion, Nova assumes Plaintiffs' claim is for "an actionable right of privacy under the privacy statute," M.G.L. c. 214, § 1B. *Id.* (citation modified). Statutory privacy claims require: "[1] a gathering and dissemination of facts of a private nature that [2] resulted in an unreasonable, substantial, or serious interference with his privacy." *Id.* Because this is an intentional tort, Plaintiffs must "plead an intentional act on the part of [Nova]." *Harvey*, 2025 WL 928776, at *4 (dismissing privacy claim). Here, as in *Harvey*, Plaintiffs "do not allege any intentional dissemination or disclosure of private facts by [Nova]." *Id.* That bars their claims.

FAC ¶¶ 214–15 do not cure this defect. Those paragraphs accuse Nova of "act[ing] with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate" and "when it failed to notify Plaintiffs [ ] timely [ ] about the Data Breach, [ ] materially impairing their mitigation efforts." (*Id.*) But neither alleges Nova intentionally disseminated private facts, and the FAC "alleges no facts suggesting that [Nova] itself

18

gathered or disseminated [Plaintiffs'] private information, or otherwise acted intentionally to intrude upon [their] privacy." *Shea*, 2025 WL 2577196, at \*6 (dismissing privacy claim).

### D.        The Unjust Enrichment Claim (Count IV) Fails Because Plaintiffs Have Not Alleged A Sufficient Benefit Conferred On Nova

"[I]n the alternative" to their contract claim, Plaintiffs assert unjust enrichment.  (FAC ¶ 223.)  Here, Plaintiffs must plead that (1) they conferred a measurable benefit upon Nova, (2) Nova accepted that benefit, and (3) retention of the benefit would be inequitable without payment. *Harvey*, 2025 WL 928776, at \*4 (dismissing unjust enrichment claim).

*First*, the "benefit" Plaintiffs allege is no benefit at all.  Plaintiffs allege Nova "benefitted from (1) using their PII to provide services or facilitate employment, and (2) accepting payment or using their labor to derive profit."  (FAC ¶ 224.)  But Plaintiffs do not plead, just as the plaintiffs in *Harvey* did not, that Nova "gained any benefit from storing the PII, nor did it gain an identified benefit by exposing [Plaintiffs'] PII to misuse by an unknown person."  2025 WL 928776, at \*4. Nor can (or do) Plaintiffs allege that they "paid" Nova to protect their personal information, such as through lower pay, because Massachusetts requires employees to be paid their full wages.[14]  *See* M.G.L. c. 149, § 148, 1st par; *Webb II*, 2023 WL 5938606, at \*4 (dismissing unjust-enrichment claim in data breach case where plaintiffs did not allege they paid a premium for data security).

*Second*, even if a benefit existed here, Plaintiffs cannot establish Nova retained it inequitably.  Retaining a benefit is inequitable if "reasonable people would expect payment by the defendant to the plaintiff for [it]."  *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (citation modified) (dismissing unjust-enrichment claim because reasonable people do not expect a store to pay for their ZIP codes).  Employees do not expect employers to pay for

---

[14]        For this reason, FAC ¶¶ 48, 68, 87, 109's allegations that each "Plaintiff reasonably understood that a portion of the funds derived from [his or her] employment would be used to pay for adequate cybersecurity and protection of PII" should be disregarded.

information "required . . . to obtain employment and payment for that employment."  (FAC ¶¶ 46, 66, 85, 107.)

### E.    The Declaratory Judgment Claim (Count V) Should Be Dismissed

Plaintiffs' final claim "duplicat[es]" their negligence and implied contract claims with "no further remedy" and should be dismissed.  *Martorana v. Progressive Direct Ins. Co.*, No. 22-cv-10613-DJC, 2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023) (dismissing declaratory relief claim asking court to determine whether the party breached its contract as encompassed by the breach-of-contract claim).  Plaintiffs allege in their other claims that Nova breached its "common-law duties to exercise reasonable care."  (*E.g.*, FAC ¶ 191 (negligence).)  This claim seeks a declaration to that effect.  (*Id.* ¶ 235.)  And injunctive relief is a remedy, not a claim.  *See Julian v. McDonald Keohane Funeral Home Inc.*, No. 18-10113-RGS, 2018 WL 523200, at *1 (D. Mass. Jan. 23, 2018) (dismissing declaratory and injunctive relief claim).

### CONCLUSION

For all these reasons, the Complaint should be dismissed.

Dated: August 12, 2026

Respectfully submitted,

*/s/ Scott T. Lashway*
Scott T. Lashway (BBO #655268)
Matthew M.K. Stein (BBO #666127)
Mara A. O'Malley (BBO #693946)
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
*slashway@mintz.com*
*mstein@mintz.com*
*momalley@mintz.com*

***Counsel for Defendant***
***Nova Biomedical Corporation***

---

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

Dated:  August 12, 2026      */s/ Scott T. Lashway*
                                            Scott T. Lashway

---

20