**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**AMY RYAN, ERIC BRODEUR**, **RENELL PRESTON**, and **SIMA PERSAD RAHMAN**, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

**NOVA BIOMEDICAL CORPORATION**,

*Defendant*.

Civil Action No. 1:26-cv-10782-GAO

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## INTRODUCTION & BACKGROUND

### A. Defendant's data breach

In July 2025, cybercriminals hacked Nova's computer systems and accessed its system infrastructure, where they deployed malware and compromised Plaintiffs and Class Members' highly sensitive personal identifiable information ("PII"). Amended Complaint ("Compl.") ¶¶ 21–22. Nova itself admitted that "an unauthorized actor accessed Nova's electronic infrastructure and deployed malware," and that victims' "personally identifiable information may have been impacted." *Id.* ¶ 22. Following the breach, Plaintiffs started suffering the harms that follow data breaches. For example, at least one Plaintiff received a "Dark Web" alert from LifeLock warning him his information was at risk, and another Plaintiff suffered fraud. *Id.* ¶ 23–24, 29, 92. And as Plaintiffs explain in their complaint, they live under a "lifelong" risk for suffering these harms given the data the breach compromised.

Nova knew it was at risk for being hacked and failed to prepare for it. Nova is a Massachusetts corporation headquartered in Waltham, Massachusetts, and a global leader in healthcare diagnostics, bioprocessing technologies supporting drug development, food and beverage analytical testing, and solutions for veterinary medicine. *Id.* ¶¶ 12, 16. To operate its business, Nova receives and maintains the PII of thousands of its current and former employees and customers, including the PII of Plaintiffs and Class Members compromised in the Data Breach. *Id.* ¶ 17. Nova agreed to safeguard that information in accordance with its internal policies and state and federal law, and it recognized its obligation to protect personal information through its Privacy Policy. *Id.* ¶¶ 18–20. That policy represented that Nova uses "appropriate technical, administrative, and physical safeguards" to protect personal information and limits access to those with a business need to know. *Id.* ¶ 20. It further provides that employees, agents, contractors, and

other third parties will process personal information only on Nova's instructions and subject to confidentiality obligations. *Id.*

But despite those obligations, Nova failed to adequately protect Plaintiffs' and Class Members' PII. As Plaintiffs allege, Nova failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. *Id.* ¶ 5. Nova had no effective means to prevent, detect, stop, or mitigate breaches of its systems, thereby allowing cybercriminals access to the PII of its current and former employees and customers. *Id.* ¶ 4. Nova's failures thus placed Plaintiffs and Class Members' PII in a vulnerable position and rendered them easy targets for cybercriminals. *Id.* ¶ 5.

Like leaving the vault door open at a bank, Nova's inadequate security allowed unauthorized actors to enter its computer network and access sensitive PII. The compromised information included names, dates of birth, Social Security numbers, addresses, driver's license or state identification card numbers, financial institution information, and health insurance information. *Id.* ¶ 30. In total, Nova injured at least 10,764 persons through the exposure of their PII, including, upon information and belief, Nova's current and former employees and customers. *Id.* ¶ 31. And at least one Plaintiff received an alert indicating that information potentially belonging to him had been detected on the dark web, further supporting the allegation that the stolen PII has already been published—or will be published imminently—by cybercriminals. *Id.* ¶¶ 23–29.

Plaintiffs thus allege Nova caused the Data Breach by failing to implement and maintain reasonable safeguards needed to protect their PII, including failing to adequately train its employees on cybersecurity and failing to maintain reasonable security safeguards and protocols. *Id.* ¶¶ 4–5, 35. Nova also failed to use the security practices recognized by the FTC and accepted

industry standards. *Id.* ¶¶ 151–160. Those practices included educating employees, using strong passwords, implementing multi-layer security, encryption, multi-factor authentication, data backups, limiting access to sensitive data, installing malware detection software, monitoring network activity, and training staff on critical security practices. *Id.* ¶¶ 157–158. Implementing these safeguards would have complied with industry standards, including the NIST Cybersecurity Framework Version 2.0 and the Center for Internet Security's Critical Security Controls. *Id.* ¶ 159. By failing to comply with these accepted standards, Nova opened the door to the criminals—thereby causing the Data Breach. *Id.* ¶ 160.

**B. Nova's data breach harmed Plaintiffs and the Class**

Nova's Data Breach harmed Plaintiffs and the Class and threatens to harm them again. Nova did not begin notifying Plaintiffs and the Class until January 27, 2026—a full 189 days after the Data Breach began—depriving them of the opportunity to timely mitigate the risks associated with the exposure of their PII. *Id.* ¶¶ 32–33. And when Nova finally notified Plaintiffs and the Class about the Data Breach, it acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiffs and the Class to "Remain vigilant and carefully review your online accounts, financial statements, and explanations of benefits from your health insurers for any unauthorized activity." *Id.* ¶ 34. Plaintiffs have spent and will continue to spend time and resources monitoring their accounts and credit, responding to suspicious activity, and taking steps to protect themselves from identity theft and fraud. *Id.* ¶¶ 53–56, 72–75, 94–97, 113–116, 123. Those mitigation efforts were not voluntary or self-inflicted; they were the foreseeable response to Nova's own warning that Plaintiffs' PII had fallen into the hands of cybercriminals.

Nor are Plaintiffs' injuries hypothetical. Plaintiff Renell Preston, for example, experienced multiple incidents of suspected identity theft and fraud perpetrated using PII stolen in the Data Breach, including unauthorized charges totaling thousands of dollars, an attempted paycheck rerouting, an attempted 401(k) withdrawal, and a fraudulent credit application. *Id.* ¶ 92. Other Plaintiffs experienced increased spam and scam calls and texts, anxiety, stress, sleep disruption, and fear concerning the security of their financial information and exposed PII. *Id.* ¶¶ 53–56, 72–75. These injuries are directly tied to the compromise of Plaintiffs' PII and the resulting need to monitor and protect against misuse.

The harm is not limited to injuries already experienced. Plaintiffs and the Class face an ongoing and heightened risk of identity theft and fraud because their PII—including names, dates of birth, Social Security numbers, addresses, identification numbers, financial information, and health insurance information—has been exposed to cybercriminals and may be published or sold on the dark web. *Id.* ¶¶ 29–30, 124, 127, 129–131. Because Social Security numbers and other identifying information cannot easily be changed, the risk of misuse may persist for years, even if no additional fraudulent activity is immediately detected. *Id.* ¶¶ 124, 130–135.

Accordingly, Plaintiffs and the Class have suffered damages including monetary losses, lost time and opportunity costs, anxiety and emotional distress, loss of control over their PII, diminution in the value of their PII, and out-of-pocket expenses incurred to prevent, detect, and recover from identity theft and fraud. *Id.* ¶ 123. Defendant's provision of limited credit-monitoring and identity-related services does not compensate Plaintiffs and the Class for these injuries or eliminate the continuing risk created by the Data Breach. *Id.* ¶¶ 38–40. Because the compromised information cannot simply be made private again, Plaintiffs and Class Members face an ongoing risk of identity theft and fraud for years to come. *Id.* ¶¶ 124, 133.

The Court should therefore deny Nova's motion for two reasons. ***First***, Plaintiffs established their standing to sue because the breach harmed them and threatens to harm them again. And ***second***, Nova breached its duties under tort, contract, and statutory principles, causing damages that establish each cause Plaintiffs allege.

## LEGAL STANDARDS

Rule 12(b)(1) "requires a court to assess whether the court has subject matter jurisdiction over the claimed injuries." *Harvey v. Nat'l Amusements, Inc.*, No. 24-10027-GAO, 2025 U.S. Dist. LEXIS 57256, at *4 (D. Mass. Mar. 27, 2025); Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). At the pleading stage, however, courts accept well-pleaded factual allegations as true and draw reasonable inferences in the plaintiffs' favor. *Harvey*, 2025 U.S. Dist. LEXIS 57256, at *4; *Royal v. Leading Edge Prods.*, 833 F.2d 1, 1 (1st Cir. 1987).

Rule 12(b)(6) tests the legal sufficiency of the claims—and permits dismissal at this early stage, where no discovery has taken place—only when the facts alleged fail to state a "plausible" claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); Fed. R. Civ. P. 12(b)(6). While the plaintiffs must provide more than mere labels and conclusions, "specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). A claim survives even if it is "improbable" that a plaintiff will be able to prove those facts, or if the odds of recovery are "remote and unlikely." *Id.* (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)).

## ARGUMENT

### a. Plaintiffs Have Article III Standing

Plaintiffs have standing because Defendant's Data Breach harmed Plaintiffs, threatens to harm them again, and requires them to spend resources to mitigate that harm. Article III standing requires: (1) an injury-in-fact, (2) that is fairly traceable to the defendant, and (3) redressable by the court. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). For example, monetary or physical harms are "traditional tangible harms" that "readily qualify[.]" *TransUnion*, 594 U.S. at 425. But the Supreme Court is clear that "intangible harms" like the "disclosure of private information" also establish Article III standing. *Id*. Additionally, the "risk of future harm" may establish standing if plaintiffs "were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury)[.]" *Id*. at 437.

i. <u>Plaintiffs alleged "concrete" injuries</u>

*A "disclosure of PII" confers standing.* Plaintiffs have standing because the breach disclosed their data and violated their privacy. As *TransUnion* explains, the "disclosure of private information" constitutes a concrete intangible harm sufficient to establish Article III standing. 594 U.S. at 425. In *TransUnion*, the Supreme Court explained that the "disclosure of private information" is a concrete injury "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. (citing *Spokeo*, 578 U.S. at 340–41). Indeed, following *TransUnion*, federal courts recognize that the "disclosure of private information" and "loss of privacy" following a data breach establishes Article III standing. *See, e.g., In re Lurie Child Hosp. Data Sec. Litig*., No. 24-cv-05503, 2025 U.S. Dist. LEXIS 190839, at *25 (N.D. Ill. Sep. 27, 2025) (applying *TransUnion* and holding that "loss of confidentiality in the exposed PII and PHI, itself, constitutes an injury in fact giving them standing"); *Wilkins v. English Constr. Co*., No. 6:24-CV-00059, 2026 U.S. Dist. LEXIS 48888, at *7 (W.D. Va. Mar. 9, 2026) (finding Article III standing based on the "disclosure of private information" when plaintiffs alleged exposure of

data "on the dark web"); *In re New Era Enters. Inc. Data Incident Litig.*, No. 25-732, 2026 U.S. Dist. LEXIS 23490, at *16 (S.D. Tex. Feb. 4, 2026) (applying *TransUnion* and finding Article III standing for "loss of privacy" when plaintiffs alleged that "their information was disseminated when the hackers stole it and posted it to the dark web").

Plaintiffs allege precisely that: information that was previously private was stolen from Nova's systems and placed in the hands of unauthorized individuals, with Plaintiffs' loss of control over that information continuing thereafter. Compl. ¶¶ 40, 123. Plaintiffs allege that Nova's Data Breach exposed their highly sensitive PII—including names, dates of birth, Social Security numbers, addresses, driver's license or state identification numbers, financial institution information, and health insurance information—to cybercriminals. *Id.* ¶¶ 22–24, 29–30. Plaintiffs further allege that their stolen PII has already been published, or will be published imminently, on the dark web. *Id.* ¶ 29. At least one Plaintiff received a LifeLock Dark Web Monitoring alert notifying him that information potentially belonging to him had been detected on the dark web. *Id.* ¶ 23. And Plaintiffs allege that Nova's own Data Breach notice acknowledged a present, continuing, and significant risk of identity theft and instructed Plaintiffs to remain vigilant for unauthorized activity. *Id.* ¶ 34. Accordingly, Plaintiffs provide an additional concrete basis for Article III standing.

*Plaintiffs face an imminent and impending risk of identity theft and fraud.* Plaintiffs have standing because they have established a sufficient risk of future harm combined with cascaded injuries stemming from that harm. The Supreme Court is clear that the "risk of future harm" may establish standing if the plaintiffs "were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury)[.]" *TransUnion*, 594 U.S. at 437. In other words, this form of injury-in-fact has two pleading requirements: (1) the risk of

future harm, and (2) an additional injury caused by the risk itself. *Id*. As explained below, Plaintiffs have satisfied both prongs.

First, Plaintiffs sufficiently established a "sufficient risk of future harm[.]" *TransUnion*, 594 U.S. at 438. In *Webb*, the First Circuit identified three considerations relevant to whether a data breach creates an imminent and substantial risk of future harm: "(1) whether the breach involved deliberate theft for financial gain; (2) whether the stolen PII has been misused; and (3) whether the nature of the exposed PII creates a heightened risk of identity theft." 72 F.4th at 375. The court explained that these considerations are neither exclusive nor determinative. *Id.* Plaintiffs satisfy those considerations here.

Plaintiffs allege that cybercriminals deliberately infiltrated Nova's systems, gained access to Plaintiffs' sensitive PII, and stole that information. Compl. ¶¶ 21–30. Plaintiffs further allege that their PII has been, or will imminently be, published on the dark web, and that at least one Plaintiff received an alert that information potentially belonging to him had been detected there. *Id*. ¶¶ 23–29. The compromised information includes names, dates of birth, Social Security numbers, addresses, driver's license or state identification numbers, financial institution information, and health insurance information. *Id*. ¶ 30. Plaintiffs also allege actual misuse of compromised information, including multiple instances of identity theft and other fraudulent activity, as alleged by Plaintiff Preston. *Id*. ¶ 92. Such allegations of actual misuse constitute a concrete injury under Article III. *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 369–74 (1st Cir. 2023) (holding that actual misuse of stolen PII to file a fraudulent tax return constituted a concrete injury); *In re Equifax Inc. Customer Data Security Breach Litigation*, 999 F.3d 1247, 1262 (11th Cir. 2021) (recognizing "identity theft and damages resulting from such theft" as concrete injuries); *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012).

These allegations establish a substantial risk of future identity theft and fraud, particularly where Plaintiffs allege that their sensitive PII remains in the hands of cybercriminals. *Id*. ¶¶ 40, 123–24.

*Second*, Plaintiff sufficiently pleaded "some other injury" caused by the "exposure to the risk itself[.]" *TransUnion*, 594 U.S. at 437. Plaintiffs allege injuries that flow directly from their exposure to the substantial risk created by the Data Breach, including time and effort spent monitoring their accounts, emotional distress, anxiety, sleep disruption, stress, fear, and frustration. Compl. ¶¶ ¶¶ 53–56, 72–75, 92–97, 113–20, 123–24. Plaintiff Preston additionally alleges actual identity theft and fraudulent activity resulting from the misuse of his information. *Id*. ¶ 92. Plaintiffs' injuries therefore are not based solely on a speculative possibility of future harm; they allege that the risk itself has already caused concrete injuries. *Webb* supports this conclusion. There, the First Circuit recognized standing where a plaintiff alleged fear for her financial security, time spent monitoring accounts to prevent fraud, and anxiety and stress. 72 F.4th at 370. Plaintiffs here allege materially similar injuries, in addition to the actual fraudulent activity alleged by Plaintiff Preston.

Nova cites *Harvey* for the proposition that the court was unaware of any First Circuit data-breach case in which standing was established absent allegations of "actual misuse" of stolen data. Def.'s Mot. at 7. But Plaintiffs here *do* allege actual misuse. Specifically, Plaintiff Preston alleges multiple instances of identity theft and fraudulent activity, including unauthorized credit-card charges, an attempted paycheck diversion and 401(k) withdrawal, and an unauthorized credit application. Compl. ¶ 92. Thus, even under Nova's reading of *Harvey*, Plaintiffs have pleaded the very type of actual misuse Nova claims is necessary to establish a sufficient risk of future harm. Nova's separate contention that Plaintiff Preston's fraudulent activity is not traceable to Nova's

Data Breach does not negate the risk of future harm alleged by Plaintiffs; that issue concerns traceability and is addressed below.

*Lost time and money confer standing.* Because Plaintiffs have established the risk that they will suffer harm, they justify their efforts to mitigate that harm. In *Webb*, the First Circuit held that "time spent responding to a data breach can constitute a concrete injury sufficient to confer standing," particularly where that time otherwise would have been put to productive use. *Webb*, 72 F.4th at 375. Plaintiffs' allegations readily satisfy that standard. Plaintiffs allege that they have already spent, and will continue to spend, significant time and effort monitoring their accounts to protect themselves from identity theft. Compl. ¶¶ 53, 72, 92–94, 113. Plaintiff Preston alleges even more: as a direct result of the Data Breach and ensuing identity theft and fraudulent activity, he spent substantial time communicating with his employer, human resources personnel, financial institutions, legal counsel, law enforcement, and the Federal Trade Commission to report fraud, dispute unauthorized activity, secure his accounts, and prevent further misuse of his PII. *Id*. ¶ 93. He further alleges that he has spent countless hours addressing these issues—time that otherwise would have been devoted to work, family, and personal matters. *Id*. Indeed, Nova itself instructed Plaintiffs to monitor their accounts following the Data Breach. *Id*. ¶ 34. Plaintiffs therefore have alleged an actual injury—not merely a speculative future harm—from the time and resources they have expended responding to Nova's Data Breach.

*Emotional distress constitutes a concrete injury***.** The First Circuit's decision in *Webb* is again instructive: there, allegations that a plaintiff feared for her financial security, monitored her accounts to prevent fraud, and experienced anxiety and stress supported standing. *Webb*, 72 F.4th at 375. Plaintiffs here similarly allege that the Data Breach caused them to fear for their personal financial security and worry about what information was exposed, and that they suffered anxiety,

sleep disruption, stress, fear, and frustration as a result. Compl. ¶¶ 55–56, 74–75, 96–97, 115–16, 123. These allegations are not bare assertions of inconvenience. Plaintiff Ryan alleges that she experienced anxiety, sleep disruption, stress, fear, and frustration after learning that her PII had been compromised, while also experiencing a spike in spam and scam calls and messages. *Id*. ¶¶ 54–56. Plaintiff Brodeur alleges the same emotional injuries following the Data Breach and an increase in spam and scam text messages offering fraudulent job opportunities. *Id*. ¶¶ 73–75. Plaintiff Preston likewise alleges anxiety, sleep disruption, stress, fear, and frustration in connection with the identity theft and fraudulent activity he experienced. *Id*. ¶¶ 92–97. Plaintiff Persad Rahman alleges the same emotional injuries following the Data Breach and an increase in spam and scam text messages and phone calls. *Id*. ¶¶ 114–116. Accordingly, Plaintiffs' detailed allegations of emotional injury therefore provide an additional concrete basis for Article III standing.

ii. Plaintiffs Establish Traceability

Plaintiffs need not establish traceability with certainty at the pleading stage, as the standard is plausibility. And Plaintiffs meet that standard. To start, Plaintiff Preston's allegations meet his pleading burden and establish traceability. To establish traceability in the First District, a plaintiff must show a sufficiently direct causal connection between the challenged action and the identified harm. *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020). Traceability is not the same as "[p]roximate causation." *Webb*, 72 F.4th at 377. In the context of a data breach, an injury is "fairly traceable" to a defendant's conduct for the purposes of Article III standing if plaintiffs plausibly allege the defendant's actions led to the exposure and actual or potential misuse of the plaintiff's PII or PHI. *In re LastPass Data Sec. Incident Litig.*, No. 22-12047, 2024 U.S. Dist. LEXIS 134178 at *14 (D. Mass. July 30, 2024). For the purposes

of a motion to dismiss, the Court must "indulge all reasonable inferences" in Plaintiff's favor and accept Plaintiff's allegations as true. *Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014).

Nova's argument that Plaintiff Preston's injuries are not traceable because some fraudulent activity preceded the Data Breach improperly resolves factual questions against Plaintiffs at the pleading stage. Def.'s Mot. at 7–10. Nova focuses on several incidents involving Plaintiff Preston that occurred before July 22, 2025. *Id.* This argument is baseless. The Complaint also alleges identity theft and fraudulent activity occurring after the Data Breach, including, on October 30, 2025, a notification of an unauthorized charge from American Express and an email from Navy Federal Credit Union stating that existing accounts had been closed and new accounts had been opened without authorization. Compl. ¶ 92. The Complaint alleges facts supporting that inference: Nova maintained Plaintiff Preston's PII in connection with his employment, Nova disclosed that an unauthorized actor accessed its systems and that Plaintiffs' PII may have been impacted, and Plaintiff Preston alleges additional identity-theft activity after the Data Breach. *Id.* ¶¶ 89–92. Those allegations must be accepted as true at this stage and construed in Plaintiff Preston's favor. *Kerin*, 770 F.3d at 981.

Plaintiffs otherwise establish how Nova caused their injuries. The Complaint identifies the categories of PII allegedly compromised and explains how that information can facilitate identity theft and fraud. Plaintiffs allege that the Data Breach potentially compromised names, dates of birth, Social Security numbers, addresses, driver's-license or state-identification numbers, financial institution information, and health-insurance information. Compl. ¶ 30. They further allege that criminals can use combinations of this information to commit identity theft and fraud and that Social Security numbers, in combination with other identifying information, can facilitate fraudulent activity. *Id.* ¶¶ 127–37.

These facts distinguish this case from *Santos-Pagán.* There, plaintiff failed to allege what information was needed to open the fraudulent cellphone account or whether that information was among the information exposed in the defendant's breach. *Santos-Pagán v. Bayamon Med. Ctr.*, 178 F.4th 66, 73 (1st Cir. 2026). Here, Plaintiffs identify the sensitive categories of information allegedly exposed and plead the specific ways in which that information can be used for identity theft and fraud. Compl. ¶¶ 30, 127–37. Plaintiffs therefore have pleaded substantially more than the generalized assertion rejected in *Santos-Pagán*.

Accordingly, Plaintiffs have adequately pleaded that the information exposed in Nova's Data Breach could lead to their alleged injuries.

iii. <u>Plaintiffs Have Standing to Seek Injunctive Relief</u>

Plaintiffs have standing to seek injunctive relief because they allege a likely future injury that their requested injunction could redress. Standing for injunctive relief depends on whether plaintiffs are likely to suffer future injury, and the requested relief must be likely to redress that injury. *Webb*, 72 F.4th at 378. Here, Plaintiffs allege that Nova's inadequate data-security practices resulted in the exposure of their sensitive PII and continue to place that information at risk of misuse. Compl. ¶¶ 21–30, 123, 127–40, 189, 234. Plaintiffs accordingly seek prospective relief directed at Nova's data-security and data-handling practices. *Id.* ¶¶ 219–221, 235–40. Unlike in *Webb*, where the plaintiffs failed to allege that another data breach was likely to occur, Plaintiffs here allege an ongoing risk of harm arising from the exposure of their PII and seek relief aimed at preventing further compromise of that information. 72 F.4th at 378.

## II. The Complaint States Claims Upon Which Relief May Be Granted

i. <u>Nova was negligent</u>

Plaintiffs adequately allege a claim for negligence because they plausibly allege that Nova owed them a duty to safeguard their PII, breached that duty by failing to implement reasonable data-security measures and timely notify Plaintiffs of the Data Breach, and caused them to suffer cognizable injuries. Under Massachusetts law, a plaintiff states a negligence claim by pleading: (1) duty; (2) breach; (3) causation; and (4) damages. *Ryba v. LaLancette*, 417 F. Supp. 2d 199, 204 (D. Mass. 2006). Massachusetts courts have held that allegations like Plaintiffs' are sufficient at the pleading stage. *Weekes v. Cohen Cleary P.C.*, 723 F. Supp. 3d 97, 103 (D. Mass. 2024); *Webb v. Injured Workers Pharmacy, LLC*, 2023 U.S. Dist. LEXIS 161097, at *5–7 (D. Mass.); *Priddy v. Zoll Medical Corp.*, No. 1:23-cv-10575-IT, 2025 U.S. Dist. LEXIS 62112, at *33 (D. Mass. Mar. 31, 2025).

Nova says Plaintiffs fail to allege how Nova breached a duty to protect their PII or how any failure to provide timely notice caused their injuries. Def.'s Mot. at 14–16. But Plaintiffs allege that they entrusted their PII to Nova, that Nova owed duties to exercise reasonable care in handling their PII and to implement industry-standard security procedures, and that Nova failed to do so. Compl. ¶¶ 172–186. The Complaint does not merely allege that a Data Breach occurred; it identifies the security measures Nova allegedly should have implemented and expressly alleges that Nova failed to implement industry-standard cybersecurity measures, including applicable NIST and CIS standards. *Id.* ¶¶ 157–60. Plaintiffs further allege that Nova breached its duty to provide reasonably timely notice of the Data Breach and that the delay deprived Plaintiffs of the opportunity to protect their PII, mitigate harm, and take protective measures sooner. *Id.* ¶¶ 176–77, 187. These allegations are sufficient to plausibly plead breach and causation at this stage. *Webb*, 2023 U.S. Dist. LEXIS 161097, at *5–7; *Weekes*, 2024 U.S. Dist. LEXIS 47673, at *8–9. Whether Nova's security measures were reasonable, whether its notice was timely, and whether

any delay caused or exacerbated Plaintiffs' injuries are factual questions that cannot be resolved on a motion to dismiss.

Plaintiffs also adequately allege cognizable injuries. Because Plaintiffs have plausibly alleged injuries sufficient to establish Article III standing, the "same logic" supports their claim for damages. *Weekes*, 723 F. Supp. 3d at 103. Plaintiffs allege actual misuse of their PII, increased risk of future harm, lost time and money spent mitigating and remediating the effects of the Data Breach, diminution in the value of their PII, and emotional injuries including anxiety, stress, fear, frustration, and sleep disruption. Compl. ¶¶ 55–56, 74–75, 96–97, 115–16, 123. Such allegations are sufficient at the pleading stage. *Weekes*, 2024 U.S. Dist. LEXIS 47673, at *8–9; *Webb*, 2023 U.S. Dist. LEXIS 161097, at *5–7; *Priddy*, 2025 U.S. Dist. LEXIS 62112, at *33.

Nor is Plaintiff's negligence claim barred by the economic loss doctrine. Plaintiffs allege emotional injuries, including anxiety, stress, fear, frustration, and sleep disruption, which are sufficient to satisfy the personal-injury exception to the doctrine. *Webb*, 2023 U.S. Dist. LEXIS 161097, at *6; *McCormick v. Lischynsky*, No. 19-10433-FDS, 2019 U.S. Dist. LEXIS 126406, at *12 (D. Mass. July 30, 2019); *Maio v. TD Bank, N.A.*, 2023 U.S. Dist. LEXIS 40482, at *13 (D. Mass. Mar. 10, 2023); *In re LastPass Data Sec. Incident Litig.*, 742 F. Supp. 3d 109, 124 (D. Mass. 2024) (acknowledging that exceptions to the economic loss doctrine may apply where plaintiffs allege personal injuries). Courts dismiss under the economic loss doctrine where the alleged injuries are *purely* economic. *Eggiman v. Bank of Am., N.A.*, 2023 U.S. Dist. LEXIS 52029, at *9–15 (D. Mass. Mar. 27, 2023); *Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 47 (Mass. 2009); *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F. Supp. 3d 101, 107 (D. Mass. 2021). Here, Plaintiffs allege more.

As explained in *Portier v. NEO Tech. Solutions*, the economic loss doctrine does not apply when (1) the defendant exercised exclusive control over the plaintiff's PII and (2) the plaintiff was powerless to protect their data, relying entirely on the defendant to safeguard it. No. 3:17-cv-30111-TSH, 2019 U.S. Dist. LEXIS 227494, at *58–59 (D. Mass. Dec. 31, 2019). The economic loss doctrine does not bar Plaintiffs' claim because Nova owed Plaintiffs an independent duty arising from their employer-employee relationship. *Id.* at *47–60 (recognizing that a special relationship may be inferred in an employer-employee relationship). In *Rojas v. Capital One Fin. Corp.*, the Court recognized this same exception to the economic loss rule in the data breach context, explaining that "[u]nder Massachusetts law, employers likely have an independent common law duty to safeguard sensitive personal and financial information… even where the plaintiff suffers purely pecuniary damages." No. 1:23-cv-10844-JEK, 2024 U.S. Dist. LEXIS 158570, at *9 (internal citations omitted). Here, as a condition of their employment, Plaintiffs provided their PII to Nova, which Nova collected and maintained, leaving Plaintiffs dependent on Nova to safeguard that information. Compl. ¶¶ 37, 101. Thus, Plaintiffs have alleged an independent duty that takes their claim outside the economic loss doctrine.

ii. Nova breached its implied contract with Plaintiffs

Plaintiffs allege a claim for breach of implied contract because they allege that they provided Nova with their PII under an employment condition with Nova. Defendant argues that Plaintiffs fail to allege where, when, or how the implied contract was formed. Def.'s Mot. at 16–18. But Nova's argument ignores Massachusetts law recognizing that an implied contract may be inferred from the conduct and relationship of the parties and improperly asks this Court to resolve factual questions at the pleadings stage.

Under Massachusetts law, "[A]n implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties." *T.F. v. B.L.*, 442 Mass. 522, 522 (2004). In determining whether an implied contract exists, "equity and morality play a large part." *Doe v. Baystate Health Sys., Inc.*, No. 1:25-cv-10337-JEK, 2026 U.S. Dist. LEXIS 57677, at *18 (D. Mass. Mar. 19, 2026). Critically, implied contract claims may be based on promises made on websites, and a contract implied in law may exist even absent express assent where the plaintiffs' reasonable expectations are defeated. *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 162, 2024 U.S. Dist. LEXIS 38082, at *13–14. In the data-breach context, courts have recognized an implied contract where plaintiffs reasonably expected that their information would be kept private and protected consistent with applicable data-privacy laws. *Id.* at *14–15; *see also Priddy v. Zoll Med. Corp.*, Civil Action No. 1:23-cv-10575-IT, 2025 U.S. Dist. LEXIS 62112, at *44 (D. Mass. Mar. 31, 2025).

Plaintiffs' allegations satisfy these requirements. Compl. ¶¶ 131–46. Plaintiffs allege provided Nova with their PII and reasonably expected Defendant to safeguard that information. Compl. ¶¶ 46–47, 66–67, 85–86, 107–108, 193. Plaintiffs also allege Nova agreed to safeguard their PII under its internal policies and applicable state and federal law and not disclose that information to unauthorized persons. *Id.* ¶¶ 18, 197. Indeed, Nova's Privacy Policy promised to "use appropriate technical, administrative, and physical safeguards to protect the information collected through this website", "limit access to your personal information to those employees, agents, contractors and other third parties who have a business need to know", and "only process your personal information on our instructions, and they are subject to a duty of confidentiality." *Id.* ¶ 17. Thus, the parties' employer-employee relationship, Plaintiffs' provision of their PII to Nova, Nova's Privacy Policy, and the legal and industry standards governing the protection of

such information provide a sufficient factual basis from which to infer an implied agreement concerning the protection of Plaintiffs' PII.

*Weekes* does support dismissal as Nova claims. In *Weekes*, the plaintiff failed to allege how an implied contractual relationship arose from the parties' conduct. *Weekes*, 723 F. Supp. 3d 97 at *104. Here, Plaintiffs allege that Nova required them to provide their PII as a condition of employment, collected and maintained that information, and promised through its Privacy Policy to safeguard it. Compl. ¶¶ 17–18, 37, 101. Those allegations also consist with *In re Shields*, in which the court found an implied-in-law contract based on plaintiffs' expectation that their information would be kept private. 2024 U.S. Dist. LEXIS 38082, at *14–15.

iii. <u>Nova's breach invaded Plaintiffs' privacy</u>

Plaintiffs adequately allege a claim for invasion of privacy because they plausibly allege that Nova collected, maintained, and then exposed their highly sensitive PII. Under Massachusetts law, invasion of privacy requires only "(1) a gathering and dissemination of facts of a private nature that (2) resulted in an unreasonable, substantial, or serious interference with his privacy." *Webb*, 2023 U.S. Dist. LEXIS 161097, *11; *see also* M.G.L. c. 214, § 1B. Here, Plaintiffs alleged exactly that: that Nova collected, maintained, and then exposed their highly sensitive PII—causing substantial interference with their privacy, including through instances of identity theft and fraud. Compl. ¶¶ 17–19, 29–31, 34–35, 40, 43–47, 51–60, 63–67, 70–79, 82–86, 90–101, 104–108, 111–120.

Nova misstates the degree to which intentionality must be established at this early stage. Def.'s Mot. at 18–19. In *In re Shields*, the court noted that "*some* courts have held invasion of privacy is an intentional tort[.]" 721 F. Supp. 3d 152, 164 (D. Mass. 2024) (emphasis added). For example, in *Shedd*, the court denied dismissal when plaintiffs alleged "that unauthorized persons

gained access to their personal and highly confidential information due to [defendant's] inadequate, negligent and/or intentionally insufficient security measures." No. 2173CV00498C, 2022 Mass. Super. LEXIS 7, *32 (Apr. 5, 2022). Likewise, in *Walker v. Bos. Med. Ctr. Corp.*, the court denied dismissal—even when the thrust of the complaint was that private information was "inadvertently made accessible." 33 Mass. L. Rep. 179 (2015). Thus, Plaintiffs' allegations that Nova's security failures permitted unauthorized access to their highly sensitive PII are sufficient at the pleading stage.

iv. <u>Nova unjustly enriched itself at Plaintiffs' expense</u>

Plaintiffs adequately allege a claim for unjust enrichment because they allege Nova received a benefit from Plaintiffs' PII, and that Nova inequitably retained that benefit. Under Massachusetts law, to state a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred on the defendant; (2) the defendant's knowledge of the benefit; and (3) retention of the benefit under circumstances making it inequitable without payment. *In re Shields*, 721 F. Supp. 3d 165 (quoting *Infinity Fluids Corp. v. Gen. Dynamics Land Sys., Inc.*, 210 F. Supp. 3d 294, 309 (D. Mass. 2016)). Unjust enrichment is "defined as retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171 (2005).

In *Harvey*, plaintiffs' allegations failed because they did not allege that the defendant "gained any benefit from storing the PII." 2025 U.S. Dist. LEXIS 57256, at *10. In contrast, in *In re Shields*, the court denied dismissal where plaintiffs alleged that the defendant enriched itself by failing to use funds to provide reasonable data privacy and security. 721 F. Supp. 3d 152, 165 (D. Mass. 2024). Similarly, in *Shedd v. Sturdy Memorial Hospital*, the court denied dismissal where plaintiffs alleged that they "conferred a monetary benefit" but that the defendant enriched itself by

not using the funds to provide a reasonable level of security. No. 2173CV00498C, 2022 Mass. Super. LEXIS 7, at *29 (Apr. 5, 2022).

Here, Plaintiffs' allegations are sufficient—and mirror those in *In re Shields* and *Shedd*. Plaintiffs allege that they conferred a benefit on Nova through their employment and by entrusting Nova with their PII. Compl. ¶¶ 199, 224–229. Plaintiffs further allege that Nova benefited from using their PII to facilitate their employment, from accepting their labor and deriving profits from it, while saving the costs it should have expended to protect their PII. *Id*. Plaintiffs also allege that they would not have entrusted their PII to Nova absent Nova's agreement to protect it. *Id*. ¶ 199.

Nova's reliance on *Harvey* and *Webb* is therefore misplaced. In *Harvey*, the plaintiff did not allege that the defendant received a benefit from storing her PII. 2025 U.S. Dist. LEXIS 57256, at *10. And *Webb* involved plaintiffs who did not allege that the defendant "profited in any way." 2023 U.S. Dist. LEXIS 161097, at *10. Here, by contrast, Plaintiffs allege Nova received the benefit of their labor and employment, required their PII as a condition of employment, and retained the value of those benefits while failing to provide the data security Plaintiffs reasonably expected. Compl. ¶¶ 199, 224–29. Nor is Nova's retention of that benefit inequitable. Massachusetts law recognizes that whether retention of a benefit is unjust turns on the parties' reasonable expectations. *Cmty. Builders v. Indian Motocycle Assocs.*, 44 Mass. App. Ct. 537, 560, 692 N.E.2d 964 (1998); *see also Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029 (1985). Here, Plaintiffs allege Nova required them to provide their PII as a condition of employment, retained that information, and failed to protect it. Compl. ¶¶ 46, 66, 85, 107, 193. Plaintiffs therefore reasonably expected Nova to safeguard their sensitive PII.

## CONCLUSION

For the reasons above, the Court should deny Nova's motion.

Dated: September 16, 2026

Respectfully submitted,

By: *<u>/s/ Raina C. Borrelli</u>*

Raina C. Borrelli*
Cassandra P. Miller*
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com
cmiller@straussborrelli.com

Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

**Pro Hac Vice*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Raina C. Borrelli, hereby certify that on September 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 16th day of September, 2026.

STRAUSS BORRELLI PLLC

By: */s/ Raina C. Borrelli*

Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com