# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMY RYAN, ERIC BRODEUR, RENELL PRESTON and SIMA PERSAD RAHMAN *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Civil Action No. 1:26-cv-10782-JEK |
| v. | **ORAL ARGUMENT REQUESTED** |
| NOVA BIOMEDICAL CORPORATION, | |
| Defendant. | |

**DEFENDANT NOVA BIOMEDICAL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Scott T. Lashway (BBO #655268)
Matthew M.K. Stein (BBO #666127)
Mara A. O'Malley (BBO #693946)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
slashway@mintz.com
mstein@mintz.com
momalley@mintz.com

***Counsel for Defendant Nova Biomedical Corporation***

# TABLE OF CONTENTS


ARGUMENT ..... 1

I. ARTICLE III STANDING ..... 1

- A. Plaintiff Preston's Alleged Misuse Predates The Cyberattack. ..... 1
- B. No Other Plaintiff Alleges Any Actual Misuse. ..... 2
- C. Without Traceable Misuse, The Remaining Injuries Fail. ..... 4
- D. Exposure Of PII To Criminals Is Not A Disclosure By Nova ..... 5
- E. Plaintiffs Lack Standing To Seek Injunctive Relief ..... 6

II. PLAINTIFFS' OPPOSITION DOES NOT CURE THEIR PLEADING DEFECTS ..... 6

- A. Plaintiffs' Negligence Claim Still Does Not Allege What Nova Did Wrong (Count I) ..... 6
- B. Requiring PII As A Condition Of Employment Is Not Mutual Assent (Count II) ..... 7
- C. Plaintiffs Do Not Allege That Nova Disseminated Anything (Count III) ..... 9
- D. Plaintiffs Identify No Benefit That Passed From Them To Nova (Count IV) ..... 9

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Harvey v. Nat'l Amusements, Inc.*,
No. 24-cv-10027, 2025 WL 928776 (D. Mass. Mar. 27, 2025) ....................1, 2, 9, 10

*In re MCG Health Data Sec. Issue Litig.*,
No. 2:22-cv-00849, 2023 WL 3057428 (W.D. Wash. Mar. 27, 2023)....................7

*In re Sensata Techs. Data Breach Litig.*,
No. 25-cv-11726, 2026 LX 547798 (D. Mass. Sept. 30, 2026).................... *passim*

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
721 F. Supp. 3d 152 (D. Mass. 2024)....................5, 10

*Morton, et al. v. DTiQ Technologies, Inc.*,
No. 25-cv-12271, 2026 WL 2824270 (D. Mass. Sept. 21, 2026).................... *passim*

*Patterson v. Associated Wholesale Grocers, Inc.*,
No. 25-cv-02221, 2026 LX 73615 (D. Kan. Feb. 12, 2026)....................2, 4, 5

*Peterson v. E. Bos. Sav. Bank*,
No. 17-cv-11776, 2018 WL 4696746 (D. Mass. Sept. 29, 2018)....................6

*Priddy v. ZOLL Med. Corp.*,
No. 23-cv-10575, 2025 WL 975234 (D. Mass. Mar. 31, 2025) ....................8

*Razuki v. Caliber Home Loans, Inc.*,
No. 17-cv-01718, 2018 WL 6018361 (S.D. Cal. Nov. 14, 2018)....................7

*Santos-Pagán v. Bayamón Medical Center,*
178 F.4th 66 (1st Cir. 2026) ....................2, 4

*Scifo v. Alvaria, Inc.*,
No. 23-cv-10999, 2024 WL 4252694 (D. Mass. Sept. 20, 2024)....................3, 4

*Taylor v. UKG, Inc.*,
693 F. Supp. 3d 87 (D. Mass. 2023)....................4

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)....................5

*Webb v. Injured Workers Pharm. LLC,*
72 F.4th 365 (1st Cir. 2023)....................4, 5, 6

*Webb v. Injured Workers Pharm., LLC*,
No. 22-cv-10797, 2023 WL 5938606 (D. Mass. Sept. 12, 2023)....................................10

*Weekes v. Cohen Cleary, P.C.*,
723 F. Supp. 3d 97 (D. Mass. 2024)....................................8

**State Cases**

*Cmty. Builders v. Indian Motocycle Assocs., Inc.*,
44 Mass. App. Ct. 537 (1998)....................................10

*Donovan v. Philip Morris USA, Inc.*,
455 Mass. 215 (2009)....................................7

*Nelson v. Salem State Coll.*,
446 Mass. 525 (2006)....................................9

**State Statutes**

M.G.L. c. 214, § 1B....................................9

**Rules**

Federal Rule of Civil Procedure 8....................................1

Federal Rule of Civil Procedure 12....................................7, 10

The opposition reveals that this case rests on assumptions rather than allegations. Plaintiffs still cannot identify a single security measure Nova failed to implement, any misuse of PII plausibly caused by the cyberattack, any agreement regarding data security, any disclosure by Nova, or any cognizable benefit conferred on Nova. Rather than supply those, Plaintiffs repeat the same conclusory allegations and ask the Court to postpone the pleading burden until discovery. But Rule 8 requires allegations, not speculation. Because Plaintiffs have failed to establish standing and have not cured the fundamental defects in any count, the FAC should be dismissed.

## ARGUMENT

## I. ARTICLE III STANDING

The Opposition (ECF No. 37; "Opp.") never answers the one fact that decides this motion: the only misuse any Plaintiff alleges began on April 7, 2025, three and a half months ***before*** the July 22, 2025 cyberattack. (ECF No. 29, First Amended Complaint ("FAC") ¶¶ 21, 92(a).) A breach cannot cause what preceded it, and in this Circuit every theory of data-breach injury runs through actual misuse plausibly traceable to the breach at issue. *Harvey v. Nat'l Amusements, Inc.*, No. 24-cv-10027, 2025 WL 928776, at *3 & n.2 (D. Mass. Mar. 27, 2025) (no standing "for either damages or injunctive relief" absent "actual misuse traceable to the specific data breach at issue").

### *A. Plaintiff Preston's Alleged Misuse Predates The Cyberattack.*

Nova does not "improperly resolve[] factual questions against Plaintiffs[.]" (Opp. at 12.) It relies on the FAC. Preston alleges unauthorized Citi charges, an unsolicited Citi credit application, a hacked payroll account with an attempted paycheck reroute and 401(k) hardship withdrawal, and unauthorized access to his work bank account -- all between April 7 and June 2025. (FAC ¶ 92(a)–(c), (h).) The cyberattack occurred on July 22, 2025. (*Id.* ¶ 21.) Accepting Plaintiffs' allegations as true is what defeats traceability, not disregarding them.

Four of the incidents Plaintiffs invoke plead only when Preston *learned* of misuse, not when it occurred. (FAC ¶ 92(d), (e), (g), (i).) *Santos-Pagán v. Bayamón Medical Center* treats that gap as fatal, requiring "plausible support for a reasonable, let alone 'obvious,' inference of a temporal connection" and faulting a complaint "so vague about the timing . . . that it is unclear whether the account's opening even occurred after the breach." 178 F.4th 66, 72–73 & n.6 (1st Cir. 2026); *Patterson v. Associated Wholesale Grocers, Inc.*, No. 25-cv-02221, 2026 LX 73615, at *11 (D. Kan. Feb. 12, 2026) ("Without more specific allegations about when the loan applications were made or when the loan was issued, Plaintiff does not plausibly allege that the identity theft occurred as a result of the data breach"). The FAC itself pleads a "time lag" between when PII is stolen, used, and discovered, FAC ¶ 133; Plaintiffs cannot invoke that lag and then ignore it where it cuts against them. Nor can they rely on the August 4, 2025 hardship withdrawal, *id.* ¶ 92(f), because the FAC alleges Preston's payroll account was already hacked on June 18, 2025, with a paycheck reroute and 401(k) withdrawal already requested then. (*Id.* ¶ 92(b), (h).)

Two defects are independent of timing. *Santos-Pagán* requires allegations supporting the inference "that those responsible for misusing her PII did <u>not</u> obtain such PII from sources other than the data breach," 178 F.4th at 73, yet one of Preston's own incidents involves Navy Federal Credit Union, FAC ¶ 92(j), which announced its own breach in September 2024. (Mem. at 10 & n.8.) And *Harvey* rejected a fraudulent-LLC allegation because that plaintiff failed to show "an 'obvious temporal connection' between the breach and the actual misuse of his data." 2025 WL 928776, at *3. Preston's claimed misuse not only lacks that connection; it precedes the breach.

***B. No Other Plaintiff Alleges Any Actual Misuse.***

Plaintiffs allege no misuse of their data at all -- only a post-breach "spike in spam and scam text messages and phone calls." (FAC ¶¶ 54, 73, 95, 114.) Plaintiffs' own supplemental authority

rejected that theory on materially identical allegations (*see* ECF No. 39). The plaintiffs in *In re Sensata Technologies Data Breach Litigation* were also former employees who had entrusted their employer with their "sensitive personal information"; who also alleged they were "very careful" about storing and sharing it; and who also alleged a post-breach "increase in spam calls, texts and emails." No. 25-cv-11726, 2026 LX 547798, at *1, 9–10 (D. Mass. Sept. 30, 2026) (Kobick, J.). This Court held those unwanted communications concrete but untraceable, and every reason applies here. The plaintiffs did "not allege that the data being misused for spam communications -- their email addresses and phone numbers -- were among the types of information compromised[.]" *Id.* at *19. They invoked the same "Fullz" package theory the FAC pleads, FAC ¶¶ 139–40, but the court declined to credit it because they did not "contend that the Private Information they previously safeguarded is the type of data being misused." *Sensata,* 2026 LX 547798, at *20. And their concession that phone numbers and email addresses are "unregulated data" that can be "found elsewhere on the internet" "weigh[ed] against the inference that those responsible for misusing [the data] did not obtain such [information] from sources other than the data breach." *Id.* at *21. "All that remains, then, is the temporal proximity," which "[a]bsent more" fails to "clear standing's traceability hurdle." *Id.* The FAC is indistinguishable: it does not allege that phone numbers or email addresses were taken, FAC ¶ 30, and it concedes they "may not be included in the PII stolen" and are "found elsewhere on the internet," *id.* ¶¶ 139–40. *See Scifo v. Alvaria, Inc.*, No. 23-cv-10999, 2024 WL 4252694, at *4 (D. Mass. Sept. 20, 2024) (spam calls insufficient where phone numbers not compromised).

*Sensata* diverges on one fact only: those plaintiffs pleaded a quantified out-of-pocket loss -- roughly $200 per year for at least five years of monitoring, beyond the complimentary year their employer provided -- and the court sustained standing on that basis. 2026 LX 547798, at *24.

Plaintiffs plead no comparable cost. Nova provided two years of credit monitoring, and the FAC answers only that such services are "wholly insufficient[.]" (FAC ¶ 39.) The balance of Plaintiffs' allegations is identical boilerplate deriving from that same failed theory: monitoring time, fear for their financial security, emotional distress, injury from the exposure and theft of their PII, diminution in its value,[1] an imminent risk of fraud, anticipated mitigation costs, and a continuing interest in PII that remains in Nova's possession. (FAC ¶¶ 53–61, 72–80, 94–102, 113–21.) Stripped of traceable misuse and any quantified present loss, what remains is generalized unease.

***C. Without Traceable Misuse, The Remaining Injuries Fail.***

Nova never argued that Plaintiffs failed to describe these harms; it argued that they are conclusory and risk-dependent. Plaintiffs engage neither point. A material risk of future harm satisfies the concrete-harm requirement "only as to injunctive relief, not damages," so damages require a "separate concrete, present harm" caused by exposure to that risk, *Webb v. Injured Workers Pharm.*, 72 F.4th 365, 372, 376 (1st Cir. 2023) ("*Webb I*"), and the risk must itself be substantial, which in this Circuit requires actual misuse of data taken in the breach, *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 99 (D. Mass. 2023). The derivative injuries collapse with it. For example, mitigation costs are not "an independent injury sufficient to support standing," *id.* at 100, and would "flounder at the traceability element" regardless, *Santos-Pagán*, 178 F.4th at 73 n.8. The emotional-distress allegations fail for the same reason and as conclusory boilerplate. *See Scifo*, 2024 WL 4252694, at *5 n.9; *Patterson*, 2026 LX 73615, at *16–17.

---

[1] Plaintiffs fail to respond to Nova's showing that diminution in value of PII is not a cognizable injury, and their supplemental authority rejects it. *See In re Sensata Techs. Data Breach Litig.,* No. 25-cv-11726, 2026 LX 547798, at *25 (D. Mass. Sept. 30, 2026) (no concrete diminution where no allegations that they "tried to sell their data" or that "buying power in the marketplace has been diminished"); *Taylor v. UKG, Inc.*, 693 F. Supp. 3d 87, 101 (D. Mass. 2023).

### *D. Exposure Of PII To Criminals Is Not A Disclosure By Nova.*

Plaintiffs' remaining theory (*i.e.*, that "disclosure of PII" is itself a concrete injury) has no First Circuit support. (Opp. at 6–7.) *Webb I* expressly reserved whether "the exposure of their PII in the breach was itself an intangible harm sufficient to confer standing," 72 F.4th at 374 n.5, and Plaintiffs' supplemental authority, *Morton, et al. v. DTiQ Technologies, Inc.*, No. 25-cv-12271, 2026 WL 2824270 (D. Mass. Sept. 21, 2026), declined to reach it. The out-of-circuit decisions they cite rest on Fourth Circuit law or on allegations that the data was actually posted.

*TransUnion LLC v. Ramirez* forecloses the theory. The Court held that the 1,853 class members whose credit reports were actually sent to third parties were "independently harmed," while the rest were not, because there is "no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." 594 U.S. 413, 432–34, 437 (2021). Plaintiffs read the Court's reference to "disclosure of private information" as a list of cognizable injuries, but it is a list of torts, *id.* at 425, and the torts their theory tracks (public disclosure of private information and invasion of privacy) require dissemination of private information. *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 164 (D. Mass. 2024). Plaintiffs' own description confirms the mismatch: Nova "collected, maintained, and then exposed" their PII to criminals who took it. Exposure through a failure to safeguard is not publicity, and the only communication the FAC alleges is by the thieves. *See id.* Their "loss of control" allegation, FAC ¶ 123, fails for the same reason. *Patterson*, 2026 LX 73615, at *19 (rejecting loss of privacy "in and of itself" as a concrete injury). Nor does the FAC plead dissemination: Plaintiffs' PII "has been, or will imminently be," published on the dark web, FAC ¶ 29, and one Plaintiff received an alert about information "potentially belonging to him," *id.* ¶¶ 23, 92(k), neither of which identifies anyone who viewed their data.

### *E. Plaintiffs Lack Standing To Seek Injunctive Relief.*

Plaintiffs must establish standing for each form of relief sought and their prospective relief fails on redressability however their injuries are characterized. The ongoing risk they invoke is one an injunction cannot reach: improving Nova's systems "cannot protect the plaintiffs from future misuse of their PII by the individuals they allege now possess it." *Webb I*, 72 F.4th at 378. Plaintiffs must therefore plead a likely "future injury" independent of the past theft. *Id.* They have not. The FAC never alleges that a second breach is imminent or likely; it pleads only conditional harm "if [Nova] experiences a second data breach," FAC ¶¶ 123(h), 237, and *Webb I* "did not endorse a presumption that a future data breach is likely" absent remedial changes, *DTiQ*, 2026 WL 2824270, *5. The relief requested fails independently. Plaintiffs seek only "injunctive relief as necessary to protect [their] interests" -- the request *DTiQ* rejected as "broad and vaguely scoped," leaving unestablished how any risk "would be redressed[.]" *Id.* *Sensata* differs: those plaintiffs alleged the risk of another breach was "real, immediate, and substantial" and identified deficiencies in the defendant's current practices. 2026 LX 547798, at *29.

## II. PLAINTIFFS' OPPOSITION DOES NOT CURE THEIR PLEADING DEFECTS[2]

Plaintiffs do not answer Nova's showing that each remaining claim is missing an element, and no deficiency can be deferred to discovery: reasonableness becomes a factual question only once Plaintiffs identify a safeguard Nova lacked. Counts I through IV should thus be dismissed.

### *A. Plaintiffs' Negligence Claim Still Does Not Allege What Nova Did Wrong (Count I).*

The opposition does not cure the FAC's central deficiency: Plaintiffs never allege a single security measure Nova failed to implement. Their answer to Nova's showing that the FAC pleads

2 Nova moved to dismiss Count V (Declaratory Judgment) and Plaintiffs did not respond, waiving objection to dismissal. *E.g.*, *Peterson v. E. Bos. Sav. Bank*, No. 17-cv-11776, 2018 WL 4696746, at *2 (D. Mass. Sept. 29, 2018) (failure to oppose 12(b)(6) argument constitutes waiver).

no breach of any duty is to cite the same paragraphs Nova identified as deficient, FAC ¶¶ 157–60, and repeat that Nova did not comply with NIST and CIS. (Opp. at 14.) Those paragraphs catalog measures a company should have and recite control identifiers on information and belief. (FAC ¶¶ 157–59.) They never allege which control Nova failed to implement, how it failed, or how that failure permitted this intrusion. "Allegations that a system is inadequate because a negative result occurred is conclusory." *In re MCG Health Data Sec. Issue Litig.*, No. 2:22-cv-00849, 2023 WL 3057428, at *3 (W.D. Wash. Mar. 27, 2023); *see Razuki v. Caliber Home Loans, Inc.*, No. 17-cv-01718, 2018 WL 6018361, at *2 (S.D. Cal. Nov. 14, 2018) (similar).

Plaintiffs' second negligence theory (untimely notice) fails on both grounds Nova raised, and Plaintiffs address neither, claiming they "are factual questions that cannot be resolved on a" Rule 12 motion. (Opp. at 14–15.) They never allege when Nova determined whose data was affected, so nothing supports an inference that the notices were late. (Mem. at 16.) Nor does the FAC plead causation. Its damages allegations attribute every claimed harm to Nova's "failure to prevent the Data Breach," FAC ¶ 123, and trace each injury to the theft itself, *id.* ¶¶ 189, 191. The notice allegations are of a different kind -- a lost opportunity to mitigate, *id.* ¶ 33, and delay that "caused and exacerbated the harm from the Data Breach," *id.* ¶ 187, but neither identifies a harm Plaintiffs would have avoided had notice come sooner. *See Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222 (2009) (negligence requires a causal link between defendant's negligence and plaintiff's injury). *MCG Health* dismissed the identical theory because "the intrusion caused by the breach, not the notification delay, resulted in [the] alleged damages." 2023 WL 3057428, *5.

***B. Requiring PII As A Condition Of Employment Is Not Mutual Assent (Count II).***

Plaintiffs still identify no agreement, implied in fact or otherwise. Their case for one rests on the employer-employee relationship, their provision of PII to Nova, Nova's Privacy Policy, and

the legal and industry standards governing the protection of such information. None is a promise and courts in this district hold that such facts do not supply the mutual assent an implied contract requires. In *Weekes v. Cohen Cleary, P.C.*, the plaintiff gave her PII and PHI to a law firm that "required her to disclose PII and PHI as a condition of its representation"; "[m]utual assent cannot be sufficiently inferred from the parties' conduct and relationship" absent any "allegation . . . that either party ever discussed the manner of safeguarding the PII and PHI." 723 F. Supp. 3d 97, 104 (D. Mass. 2024). *Sensata* held the same of allegations "that [plaintiffs] provided their Private Information to Sensata as a condition of their employment or that Sensata had a duty imposed by its own policies, law, and industry standards," which do not show the requisite "meeting of the minds." 2026 LX 547798, *44. That is Plaintiffs' case, element for element. They answer that the *Weekes* plaintiff "failed to allege how an implied contractual relationship arose from the parties' conduct," while they have alleged the how. (Opp. at 18.) But the conduct they identify (requiring PII, collecting it, and publishing a privacy policy) is what *Weekes* and *Sensata* held insufficient, and the FAC alleges no discussion of data security and no concern about providing PII.

*Priddy v. ZOLL Medical Corp.* likewise dismissed an implied-in-fact claim premised on the defendant's privacy policy: a plaintiff "must allege sufficient facts to permit an inference that the parties reciprocally agreed to enter into an agreement based on the online privacy statement." No. 23-cv-10575, 2025 WL 975234, at *14 (D. Mass. Mar. 31, 2025) (citation omitted). The FAC pleads less. It never alleges that any Plaintiff read Nova's Privacy Policy, much less assented to it, and the Policy reaches only information "collected through this website" -- not the employment records Plaintiffs gave Nova on hire. (FAC ¶ 20.) *DTiQ* dismissed on that defect, where the only document identified was a website policy that "expressly states that it applies only to users of DTiQ's website and services," not to employment information. 2026 WL 2824270, *8. A policy

that does not address the information at issue, and that no Plaintiff is alleged to have seen, cannot be the instrument on which the parties reciprocally agreed.[3] Count II should be dismissed.

***C. Plaintiffs Do Not Allege That Nova Disseminated Anything (Count III).***

Plaintiffs still do not allege that Nova disclosed their information to anyone. Massachusetts recognizes no common-law invasion of privacy tort, and the statute reaches the defendant's own "gathering and dissemination of facts of a private nature." *Nelson v. Salem State Coll.*, 446 Mass. 525, 536 (2006); M.G.L. c. 214, § 1B. The FAC alleges that criminals took the data. Plaintiffs' answer, that Nova "misstates the degree to which intentionality must be established at this early stage" (Opp. at 18), goes to how culpable Nova's conduct must be, not to who disseminated, and their own formulation (that Nova "collected, maintained, and then exposed" their PII, *id.*) identifies no dissemination by Nova at all. "[F]ailure to take adequate protective measures does not amount to 'dissemination' of private material," and no case has imposed Section 1B liability "for failure to prevent a third-party attack." *DTiQ*, 2026 WL 2824270, *10. Count III should be dismissed.

***D. Plaintiffs Identify No Benefit That Passed From Them To Nova (Count IV).***

Plaintiffs identify nothing of value that passed from them to Nova -- only that Nova ran payroll with their PII, profited from their labor, and saved money it should have spent on data security. (FAC ¶ 224; Opp. at 19.) This Court rejected that theory in *Harvey*, dismissing the same claim by former employees who gave PII as an employment condition and alleged the defendant

---

3 Nor can Plaintiffs retreat to an implied-in-law theory, because *DTiQ* held that quasi contract is not a separate claim: Massachusetts treats it as coextensive with unjust enrichment, so the expectation Plaintiffs invoke "is properly analyzed under Plaintiffs' unjust-enrichment cause of action, rather than as a standalone cause of action." 2026 WL 2824270, *8. *DTiQ* therefore dismissed the implied contract claim in full, allowing quasi contract only to "inform its unjust enrichment analysis." *Id.* at *9. *Sensata* is no answer: the expectation there rested on policies that governed employee data and promised specific safeguards, 2026 LX 547798, at *45-47, while Nova's reaches only its website. The same disposition follows here.

"benefited from the receipt" of Plaintiffs' PII but never alleged it "gained any benefit from storing the PII, nor did it gain an identified benefit by exposing plaintiffs' PII to misuse by an unknown person." 2025 WL 928776, at *1, *4. Running payroll administers the employment for which Plaintiffs were paid, and *Webb v. Injured Workers Pharm., LLC* ("*Webb II*") dismissed the identical claim absent allegations that plaintiffs "paid extra for a security package" or that the defendant "profited in any way from plaintiffs' PII." No. 22-cv-10797, 2023 WL 5938606, at *4.

Neither of Plaintiffs' supplemental authorities reaches these allegations. *DTiQ* found a retained benefit because those plaintiffs alleged they would have "requested higher pay" had they known their PII would not be protected, and acknowledged its holding was "at odds with" *Webb II*. *See* 2026 WL 2824270, *9 n.6. No Plaintiff pleads that; the FAC alleges only that Plaintiffs would not have entrusted their PII to Nova. (FAC ¶ 199.) *Sensata* sustained the count alongside a quasi-contract built from policies governing employee data and promising specific safeguards. 2026 LX 547798, at *48–49. Nova's Privacy Policy reaches only information "collected through this website," and no Plaintiff is alleged to have read it. (FAC ¶ 20.) That gap is dispositive: the benefit must be unjust, "a quality that turns on the reasonable expectations of the parties." *Cmty. Builders v. Indian Motocycle Assocs., Inc.*, 44 Mass. App. Ct. 537, 560–61 (1998). *In re Shields* allowed the count only as "an alternative theory of relief" to a surviving contract claim, without finding a conferred benefit. 721 F. Supp. 3d at 163, 165. Count IV should be dismissed.

## CONCLUSION

The Court should dismiss the FAC, without prejudice as to standing and with prejudice as to the Rule 12(b)(6) grounds, consistent with Nova's opening brief.

Dated: October 22, 2026

Respectfully submitted,

*/s/ Scott T. Lashway*

Scott T. Lashway (BBO #655268)
Matthew M.K. Stein (BBO #666127)
Mara A. O'Malley (BBO #693946)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
*slashway@mintz.com*
*mstein@mintz.com*
*momalley@mintz.com*

***Counsel for Defendant Nova Biomedical Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of electronic filing.

Dated: October 22, 2026

*/s/ Scott T. Lashway*
Scott T. Lashway